## MILLER *v.* LIFE INSURANCE COMPANY.

1. The rules laid down in *Norris* v. *Jackson*, 9 Wallace, 125, and in *Flanders* v. *Tweed*, Ib. 425, and in the preceding case of *Kearney* v. *Case*, *supra* 275, as to the mode of finding the facts by the court (waiving a jury), under the act of March 3d, 1865 (relative to the trial of issues of fact in civil causes), and as to the effect to be given to such finding, and the manner in which the record is to be prepared for this and the extent of the inquiry to be made in this court, again set forth in detail.

2. Under that act, when on a suit on a policy of insurance the question was whether a waiver of a payment in *cash* of the premium had or had not been made, *held* in a case where the court found on the evidence as a fact that it *had* been waived, that the correctness or incorrectness of a series of requests which were founded on an assumption that it had *not* been, were not subject to review here under the act.

3. Where an insurance company instructed its agents not to deliver policies until the whole premiums are paid, " as the same will stand charged to their account until the premiums are received," and the agent did, nevertheless, deliver a policy giving a credit to the insurer and waiving a cash payment, *held* that the company, it being a stock company, was bound.

ERROR to the Circuit Court for the District of Maryland; the suit being one by Mrs. H. Miller against the Brooklyn Life Insurance Company to recover $5000, insured by her husband, Walter Miller, for her benefit, on his own life. ·

The evidence proved, or tended to prove, the following case: The insurance company—a stock company, not a mutual one—being desirous of taking risks in St. Louis,

appointed Dutcher & Fasset their general agents for that place, and gave to them, as they did to all their general agents, a printed book, showing to them their powers as agents, and containing the instructions under which the company meant that they should act. The book contained these passages:

### INSTRUCTIONS TO AGENTS.

Agents must not deliver policies until the whole premiums are paid, *as the same will stand charged to their accounts until the premiums are received,* or the policies returned to the office.

### POWERS OF AGENTS.

Agents are not authorized to make, alter, or discharge contracts, waive forfeitures, name an extra rate for special risks, or bind the company in any way; their duties being simply to obtain applications for insurance, to collect and transmit premiums, and, generally, to be the medium of communication between the policy-holder and the company.

Agents are not authorized to write the receipt of premium, or make any indorsement whatever on the policy. The president or secretary are alone authorized to sign receipts for premiums on the part of the company. When a receipt is delivered to a policy-holder by an agent, such agent must countersign the same as an evidence of payment to him.

The said Dutcher & Fasset being thus established as the recognized general agents of the company, Walter Miller, the husband, then of St. Louis, applied, in that place, June 19th, 1868, for a contract of insurance for his wife's benefit, to Dutcher & Fasset, general agents of the insurance company in the State of Missouri. The application, a printed form in part, was headed:

### BROOKLYN LIFE INSURANCE COMPANY.

Statement required from persons proposing to effect assurance in this company, and which forms the basis of the contract.

It was stated in this paper that the assured wished to pay

partly by note and partly in cash.   And at the close of it these words occur:

"It is agreed by the undersigned . . . that the policy of assurance hereby applied for shall not be binding upon this company until the amount of premium as stated therein shall have been received by said company, or some authorized agent thereof, during the lifetime of the party therein assured."

At the time of the application, the deceased having ascertained from Dutcher what was the amount of the cash portion of the premium, and what the portion to be embraced in notes, said to him:

"Send the policy to me, with the notes, and call on Solomon Scott for the cash part.   He has just promised me that he will pay it."

This Scott had been a partner in business and was a particular friend of Miller's.

The application was forwarded by the agents to the home office in New York, and in the course of a week the policy was received by Dutcher & Fasset.   Miller in the meantime had gone to Maryland.

The policy, dated June 21st, 1868, and the premium notes for him to sign, were mailed to him, in a note dated July 2d, 1868, in which the agents said:

"You will find inclosed the yearly note and the six months' note, both of which you will please to sign and return us by mail.   *The cash payment we will get of Scott when the time arrives.*"

It was stated in the policy that it was made—

"In consideration of the representations and agreement contained in the application therefor, and of the sum of $254.85 to them in hand paid, and of the annual premium of $254.85, to be paid on or before the 21st of June in each year during the continuance of this policy."

And it was provided in it, among other things, that in case the assured

"Should not pay or cause to be paid the premium as afore-

said, on or before the day herein mentioned for the payment thereof, or any note or notes which may be given to and received by said company in part payment of any premium, &c. . . . then this policy shall cease, and be null, void, and of no effect."

On the margin of the policy were these words:

"Agents are not authorized or permitted to waive, alter, or change any of the provisions of this policy."

Miller signed the notes sent to him in the letter of Dutcher & Fasset, and returned them, but said nothing about the cash premium. In their letter to Miller, inclosing the policy, Dutcher & Fasset sent a receipt in this form, partly printed, and apparently as to that part a form with which the insurance company furnished all their agents:

RECEIPT.

BROOKLYN LIFE INSURANCE COMPANY,
141 Broadway, New York.

Walter Miller—June 21st, 1868—Policy No. 4447—Life—Amount of $5000—Amount of Premium, $254.85.

| NOTE. | | CASH. | |
|---|---|---|---|
| One-third loan note, . | . $101 94 | Two-thirds cash, . . | . $76 46 |
| Cash note, . . . | . 76 45 | Interest on loan note, . | . 7 13 |
| | $178 39 | " cash note, . | . 2 67 |
| Received payment, | | Total cash, | $86 26 |

DUTCHER & FASSET,
Agents.

July 1st, 1868.

N. B. Agents MUST NOT DELIVER policies until premium is received, as no policy is IN FORCE until PAID for.

Dutcher & Fasset, as the evidence went strongly to show, frequently gave credit for the cash payment in the case of persons whom they knew would pay when called on, and in this case they sent the receipt, because, as one of them testified, they had "confidence that they could get the money at any time they called for it."

As it turned out, however, Dutcher & Fasset did not get the money payment from Scott, although it was a fact that

Scott had promised to pay it, and thère was no allegation anywhere of fraud.

The following correspondence now took place.

[*Dutcher & Fasset to Miller.*]

ST. LOUIS, July 23d, 1868.

WALTER MILLER, ESQ.,

Reese's Corner, Maryland.

DEAR SIR : The last of the month we make our report according to custom, and last evening, going home, I (the writer) called in the store and found our friend Scott intending to start East on Monday.   I suggested to him that he should pay your cash part of premium as you suggested to me, but he would not listen to it at all; so we depend on you for it, the amount being $86.26, made up as follows :

| | | | | | | |
|---|---|---|---|---|---|---|
| One-half of cash premium, | . | . | . | . | . | . $76 46 |
| Interest on annual note, | . | . | . | . | . | .  7 13 |
| "  " six months' note, . | . | . | . | . . | . |  2 67 |
| | | | | | | $86 26 |

For which amount please send me check on New York.

Truly yours,

DUTCHER & FASSET.

[*Miller to Dutcher & Fasset.*]

REESE'S CORNER, MARYLAND, August 3d, 1868.

MESSRS. DUTCHER & FASSET,

St. Louis.

GENTLEMEN : In reply to yours of the 23d, I regret that Mr. Scott did not do as he promised you.   I did not solicit or ask him to pay the note.   He told you that he would pay you the note.   Had he not told you I should have provided for the amount long since.   I have about sixty dollars on hand.   Will get the $86 26 and send to Baltimore and purchase a draft on New York, and have it sent in a day or two.

Hoping that all things will be all right in a few days, I am,.

Yours truly,

W. MILLER.

[*Same to Same.*]

REESE'S CORNER, MARYLAND, August 18th, 1868.

MESSRS. DUTCHER & FASSET,
                                St. Louis.

DEAR GENTS: I shall ship some wheat to-morrow to Messrs. Cox & Brown, Baltimore, and will direct them to send you a draft on New York for $86.26. I regret the delay, and hope it may never occur again. Shall be in St. Louis this fall. Will make arrangements to have all my notes paid at maturity.

                                Yours truly,
                                        W. MILLER.

The draft, however, not coming, Dutcher & Fasset wrote again thus:

                                ST. LOUIS, September 10th, 1868.

W. MILLER, ESQ.,
                Reese's Corner, Maryland.

DEAR SIR: Your several letters have been received; the last, under date of August 18th, in which you remark, "I shall ship wheat to-morrow to Messrs. Cox & Brown, Baltimore, and will instruct them to send you a draft on New York for $86.26."

The draft has never been sent, or it has never come to hand. Now, sir, we are fearful you will lose your policy if payment is not made soon. Give it your attention at once, if you please; and as it has been running so long, you will have to add the interest, which will be $1.34, making the amount to be remitted $87.60.

                                Truly yours,
                                        DUTCHER & FASSET,
                                                Agents.

And hearing that he was "quite sick," wrote thus:

                                ST. LOUIS, October 14th, 1868.

WALTER MILLER, ESQ.,
                Reese's Corner, Maryland.

DEAR SIR: We learn from Mr. Scott that you are quite sick. As you have not paid your cash payment on your life policy in the Brooklyn, you must be aware that the policy is forfeited, and we now inclose you two notes for part payment of the pre-

mium. It has now been standing for four months beyond the time of payment.

You will please return the policy to us. The writer regrets very much to hear of your illness, and hope you may speedily recover.

Truly yours,

Dutcher & Fasset,·

General Agents.

Miller died before this last letter reached him, and the company refusing to pay, solely upon the ground that the policy had never been in force by reason of the non-payment of the premium, the widow brought this suit, as already said, in the court below, on the policy. By consent of parties the case was tried by the court without the intervention of a jury; this sort of trial being in virtue of the 4th section of an act of Congress of March 3d, 1865, which after enacting that issues of fact in civil cases may be determined by the court without a jury, whenever the parties file a stipulation in writing, &c., proceeds thus:

"The finding of the court upon the facts, which finding may be either general or special, shall have the same effect as the verdict of the jury. The rulings of the court in the progress of the trial, when excepted to at the time, may be reviewed by the Supreme Court of the United States upon a writ of error or upon appeal, provided the rulings be duly presented by a bill of exceptions. When the finding is special, the review may also extend to the determination of the sufficiency of the facts found to support the judgment."

The testimony which tended to prove a case, such as above given, being closed, the record thus disclosed

THE PLAINTIFF'S PRAYER.

If the court shall find that the application for the policy was made by Miller, through the general agents of the defendant, at St. Louis; that upon said application the defendant executed said policy and sent the same to its general agents at St. Louis; that the said general agents, upon receipt by them of the policy, forwarded and delivered the same to Miller, who, in obedience

to the directions of the said general agents executed and re-mitted to them the premium notes provided for, and that Miller died in October, 1868, and that the defendant refused to pay the insurance money, solely upon the ground that the policy was not in force; and further shall find that neither at the time of said application for insurance, nor at the time said policy was sent to or received by said Miller, did the said general agents demand immediate payment of the cash premium, but on the contrary agreed to call upon Solomon Scott for such cash pre-mium when to them it should seem proper so to do; and said agents waived the payment of said cash premium for several months, and treated the said policy as an executed contract, then, if the court so find, the plaintiff, by her counsel, prays the court to render its verdict and judgment for the plaintiff, even though it should further find that the said cash premium was never in fact paid.

Under this prayer of the plaintiff the court below wrote this

### JUDGMENT.

The court finds all the facts stated in the above prayer, and orders judgment to be entered for the plaintiff for the sum of $5013, and costs.

The defendant had contended and so prayed the court to rule:

1st. That *if* Dutcher & Fasset never intended to waive the payment of the cash portion of the premium, and if deceased did not believe that said payment was intended to be waived, there was in law no waiver of it.

2d. *If* the deceased knew that Dutcher & Fasset had no au-thority to deliver the policy without payment of the cash por-tion of the premium, there was no waiver.

3d. *If* Dutcher & Fasset's authority was such as stated above, the defendant was not bound by their delivery of the policy without payment of the premium.

4th. That the facts, if true, as stated in the testimony in refer-ence to the application for insurance, the correspondence be-tween Miller and Dutcher, the sending of the policy and receipt to Miller, and the receipt of the notes by Dutcher & Fasset, showed that there was no waiver.

5th. That all the facts in reference to the subject, in evidence, if true showed there was no waiver.

The court refused thus to rule, but found that the payment of the cash premium was waived, and gave judgment in the way already mentioned.

*Mr. William Shepard Bryan, for the plaintiff in error:*

*First.* By the contract the policy was not to be binding on the company until the premium was paid. If this condition was not intended to be waived by the agents of the company, and if the deceased did not believe it was intended to be waived, the contract was never changed. The defendant's first prayer ought to have been granted.

*Second.* At the delivery the deceased was informed by the memorandum, at the foot of the receipt, that the policy was not "in force until paid for." The memorandum on the policy also informed him, that the agents had no authority to waive any of its provisions. This wrongful delivery, accompanied with the notice, was no waiver. The second prayer ought to have been granted.

*Third.* The delivery, such as it was, was procured by the false statement that Scott would pay the premium. Such a delivery under such circumstances was naught.

All the evidence in the case shows that the plaintiff was to be considered insured when the premium was paid; and not to be considered insured if it was not paid.

*Fourth.* Any cases where it has been held that the insurers waived the payment of the premium, were decided on the ground that the conduct of the insurers had induced the insured to believe that it was not required.

*Fifth.* The prayers of the defendant presented the questions of law hypothetically to the court. Upon the hypothesis that the facts stated in the prayer were true, the court was prayed to rule that the legal propositions were correct. The court refused to adopt these legal propositions to guide it in dealing with the evidence. If they were correct they should have been adopted by the court. They were vital to the case, as the question of waiver was a mixed one of

law and fact. The question could not be determined with-out the aid of some legal principle establishing what facts amounted to a waiver. As the court, therefore, found a waiver, but in so doing rejected as guides to this conclusion correct legal principles which were decisive of the question, the error in law is apparent. The court's ruling was, that notwithstanding it might find every fact in defendant's prayers, a waiver existed in the case. Now if these facts, supposing them to be true, negatived a waiver, an error in law was committed by the court. And it is this ruling on the point of law which the appellate court is asked to review.

*Messrs. G. C. Maund and A. Stirling, Jr., contra:*

The case was tried under the act of Congress of March 3d, 1865, which put the court in the place of a jury, and the finding of the court in the place of a verdict. The question of fact was whether the agents of the company had waived a payment of the premium in cash; and the court finds, specifically, and as a fact, that they had. That finding being in the nature of a verdict cannot be reviewed. This is per-fectly settled, both by the terms of the act of 1865 and by the full and satisfactory expositions of it given by Miller, J., in *Norris* v. *Jackson*,[*] where the rules on the subject are laid down with perfect precision and clearness,[†] and by Nelson, J., in *Flanders* v. *Tweed*.[‡] There is nothing open, then, for discussion. The court must, by this time, treat this ques-tion as settled.[§] The prayers of the insurance company are based on the contingency that if certain facts are found, in a certain way, there was no waiver; but it has been found that there was a waiver, and of course that the facts were not as hypothetically assumed. This court, under the de-cisions quoted, cannot review the evidence on which the finding was made. And if there was a waiver, how can the right of the plaintiff to recover be denied?

---

[*] 9 Wallace, 125.    [†] See its rulings *supra*, p. 279.    [‡] 9 Wallace, 425.
[§] See *Kearney* v. *Case, supra*, p. 275, not adjudged when the case was argued.

It is impertinent and improper, therefore, to discuss, in this court the point whether there was a waiver, though the whole evidence, and particularly the correspondence, shows that there was; as does some of the evidence that the agents frequently waived an immediate payment of that part of the premium meant to be paid in cash; assuming the responsibility, as of course they did, themselves. The clause in the policy was intended to annul the policy after it had gone into effect, and referred not to the first cash premium, but to subsequent ones. The clause in the application of Miller is unimportant, for there is nothing in the policy to which it can attach itself. It was in direct opposition to the practice of the company, as shown by the policy, who constantly issued policies when only part of the premium was really "paid;" premium notes being taken for the balance.

The agents had power to waive; though, of course, as their instructions told them, if they delivered policies before the whole premiums were paid, the premiums would "stand charged to *their* accounts until the premiums were received;" necessarily, if the companies charged the agents with the premiums when policies were delivered without an actual payment of premiums, the companies are bound on the policies. Can it be doubted that Dutcher & Fasset are now liable to the company for the balance of the premium?

Mr. Justice CLIFFORD delivered the opinion of the court.

Issues of fact in civil cases pending in the Circuit Courts may be tried and determined by the court without the intervention of a jury, whenever the parties or their attorneys of record file a stipulation in writing with the clerk of the court waiving a jury. Such a submission necessarily implies that the facts shall be found by the court, and the act provides that the finding may be either general or special, and that it shall have the same effect as the verdict of a jury in a case where no such waiver is made. Exceptions, however, may be taken to the rulings of the court made in the progress of the trial, and if duly taken at the time the rulings were made the rulings may be reviewed here, provided the

questions are properly presented by a bill of exceptions; and when the finding is special the review may also extend to the determination of the question whether the facts found are sufficient to support the judgment.*

On the twenty-fifth of June, 1868, the defendants insured the life of the husband of the plaintiff in the amount of five thousand dollars for the term of his natural life, " with participation of profits." Part of the premium, to wit, the sum of two hundred and fifty-four dollars and eighty-five cents was required by the rules of the company to be paid at the time the policy was delivered, and the policy recites that the plaintiff paid that sum to the defendants in hand, and the policy also states that the insured agreed to pay them a like sum on or before the twenty-first of June in each year during the continuance of the policy, and that the defendants, in consideration of those sums and of the representations and agreements contained in the application, promised and agreed to pay the plaintiff, or in case she should die before her husband, to pay the sum insured to her heirs, executors, administrators, or assigns, within sixty days after due notice and proof of the death of the person whose life is therein insured. Process was issued and served and the defendants appeared and pleaded the general issue that they never promised in manner and form as alleged in the declaration, and the issue tendered was joined by the plaintiff. Errors in pleading were waived and the parties filed a stipulation in writing that the issues of fact should be tried by the court without the intervention of a jury, and agreed that every defence admissible under any special plea should be admitted under the general issue. Evidence was introduced on both sides and the court rendered judgment for the plaintiff in the sum of five thousand and thirteen dollars and twenty-five cents, and the defendants sued out a writ of error and removed the cause into this court.

Most of the difficulty arising in the case proceeds from

---

* 13 Stat. at Large, 501.

the failure of the court to comply strictly with the require-
ments of the act of Congress, which provides that issues of
fact in civil cases may be tried and determined by the court
without the intervention of a jury. Where a jury is waived,
as therein provided, and the issues of fact are submitted to
the court, the finding of the court may be either general or
special, as in cases where an issue of fact is tried by a jury,
but where the finding is general the parties are concluded
by the determination of the court, except in cases where ex-
ceptions are taken to the rulings of the court in the progress
of the trial. Such rulings, if duly presented by a bill of ex-
ceptions, may be reviewed here, even though the finding is
general, but the finding of the court, if general, cannot be
reviewed in this court by bill of exceptions or in any other
manner.

By the express words of the act the finding may be
general or special, but if general it is final and conclusive
between the parties, unless the court which tried the case
shall grant a new trial or the judgment shall be reversed in
the appellate court for some erroneous ruling made in the
progress of the trial, which is duly presented by a bill of
exceptions. Whether the finding is general or special the
rulings of the court in the progress of the trial, if excepted
to at the time and duly presented by a bill of exceptions,
may be reviewed in this court, and in a case where the find-
ing is special the review may also extend to the determina-
tion of the question whether the facts found are sufficient to
support the judgment.

Application for the policy was made by the husband of
the plaintiff, since deceased, and he obtained the same for
her benefit through the general agents of the insurers. Ac-
tual payment of the cash premium was never made by the
plaintiff nor by her deceased husband. Nothing of the kind
was pretended at the trial, but the plaintiff introduced evi-
dence tending to prove that the agents of the company de-
livered the policy without complying with that part of their
instructions; that they agreed to waive that requirement
and to call upon a third person, named by the decedent, for

the same whenever they should deem it proper so to do, and that the policy was delivered to the applicant and became operative under that arrangement.

. . Policies, as the defendants proved, were required to be issued by the officers of the company and could not be legally executed by the ordinary agents. All such agents could do, in the outset, was to prepare the application, have it duly executed, and transmit it to the home office; and it appears that they did so in this case and that they received a policy in return duly executed. Whereupon they inclosed the policy, with the two notes for the credit portion of the premium, to the decedent, who promptly signed the notes and inclosed the same in a letter addressed by mail to the persons from whom the notes, with the policy, were received. In their letter to the decedent inclosing the policy, the agents say, "the cash payments we will get of Scott when the proper time arrives." They subsequently called upon that person for the cash premium, but he refused to pay it as he had agreed to do with the decedent, and the agents thereupon gave notice of his refusal to the applicant for the policy and requested him to make the payment. He acknowledged the receipt of their letter and promised to procure a draft for the amount and send it to them in a few days, but he did not send the draft, and the agents wrote him again informing him that the draft had never come to hand, and expressing their fears that if the payment was not made soon he would lose his policy, adding that the payment had been delayed so long that he would have to add interest to the premium, amounting to one dollar and thirty-four cents. Payment being still neglected, and the agents having learned from Scott that the person insured was "quite sick," they informed him by letter that his policy was forfeited, and inclosed to him the two notes given for the credit portion of the premium, but the letter did not "reach his home" till after his death.

Such agents were instructed not to deliver policies until the whole premium was paid, and were told that if they did the premium would stand charged to them until the same

was received by the company or the policy was returned to the office. Evidence to that effect was also given by one of the agents who delivered this policy, but he admitted that it was their custom in some cases not to call for the money at the time from parties with whom they were well acquainted, and when asked on cross-examination what they meant by saying, in their letter inclosing the policy to the applicant, that they would get the cash payment of the person named when the proper time arrived, he admitted that they sometimes gave the receipt before they received the money, and that they had confidence in this case that they could get the money on call.

But the payment of the cash premium was not made, and in view of that fact and the other evidence in the case the defendants requested the court to rule as follows: (1) That the evidence showed that the agents never intended to waive the prepayment of the cash premium, and that the applicant for the policy did not believe that they intended to make any such waiver, and that the defendants, if the court so find, are not liable in this action. (2) That if the court so find, and that the applicant knew that the agents had no authority to deliver the policy without such payment, then there was no waiver of that requirement and the defendants are entitled to judgment. (3) That if the court believe from the evidence that the authority of the agents was such as is shown in their instructions, then the defendants are not bound by the act of the agents in delivering the policy without such payment, and the plaintiff cannot recover. (4) That the facts given in evidence, as recited, show that there was no waiver of that requirement, as is supposed by the plaintiff. (5) That the facts testified to by the two witnesses examined under the commission, if true, show that the agents of the defendants did not waive the payment of the cash premium.

Suppose the facts proved to have been as assumed by the defendants in their requests, then it might well be conceded that the judgment was for the wrong party, but the issues

of fact were tried and' determined by the Circuit Court, and the act of Congress provides that the finding of the Circuit Court in such cases shall have the same effect as the verdict of a jury, and the Constitution provides that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.*  Facts so tried could only be re-examined, under the rules of the common law, either by the granting of a new trial by the court where the issue was tried or to which the record was returnable, or by the award of *a venire facias de novo* by an appellate court for some error of law which intervened in the proceedings.†  Matters of fact found by the Circuit Court under such a submission cannot be re-examined here, as by the express language of the act the review, when the finding is general, is confined to the rulings of the court in the progress of the trial, and even when the finding is special nothing else is open to review except the inquiry whether the facts found are sufficient to support the judgment.

Tested by these rules, which are believed to be undeniable, it is clear that no one of the said several requests presented by the defendants shows any ground for reversing the judgment, as every one of them assumes as facts matters dependent upon the evidence, and which are not embraced in the findings of the Circuit Court.  All matters of fact must be found by the Circuit Court, and not by the Supreme Court, as the act of Congress provides that the issues of fact may be tried and determined by the Circuit Court where the suit is brought.  Rejected by the Circuit Court as the several requests under consideration were, it is too plain for argument that no one of the propositions of fact therein contained is found to be true by the Circuit Court.  On the contrary, the complaint of the defendants is that the Circuit Court improperly found a different state of facts, and gave judgment for the plaintiff.  They contend that the Circuit

---

* 2 Story on the Constitution, § 1770.

† Parsons v. Bedford, 2 Peters, 448; 2 Story on the Constitution, § 1770.

Court ought to have found the facts to be as assumed by them in their requests, and what they seek to accomplish by the writ of error is to show that the finding of the Circuit Court is erroneous, and to induce this court to set aside that finding, affirm the propositions of fact assumed in their requests, reverse the judgment of the Circuit Court, and grant a new trial or render judgment in their favor. Enough has already been remarked to show that nothing of the kind can be done, as the act of Congress requires that the facts must be found by the Circuit Court.* Inferences of fact must be drawn by the Circuit Court, which, by the agreement of the parties, is substituted for a jury, and cannot be drawn by this court, which sits as a court of errors.† Conclusions of fact cannot be found by this court when sitting as a court of errors under the act of Congress authorizing the Circuit Courts to try and determine issues of fact in civil cases, as in the case before the court. What is required is that the findings of the Circuit Court shall contain the conclusions of fact, or, as the rule is stated in a recent decision of this court, a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest, and it is well-settled law that the finding must be sufficient in itself without inferences or comparisons, or balancing of testimony or weighing evidence.‡

Testimony as to a conversation between the agent of the defendants and the person designated by the applicant to pay the cash premium was introduced by the plaintiff, subject to the objection made by the defendants, but it is not necessary to examine that objection, as the testimony was subsequently stricken out at the defendants' request.

Having disposed of the exceptions to the rulings of the court, it only remains to determine whether the facts found are sufficient to support the judgment. Separate findings are much to be preferred in such a case to the form adopted

---

* Norris v. Jackson, 9 Wallace, 127.
† Tancred v. Christy, 12 Meeson & Welsby, 323.
‡ Burr v. Des Moines Co., 1 Wallace, 102.

by the Circuit Court, as the review extends to the inquiry whether the judgment can be supported by the findings. Instead of that, however, the Circuit Court adopted the prayer presented by the plaintiff, and certified in the record that "the court finds all the facts stated in the above prayer, and orders judgment to be entered for the plaintiff" in the sum therein specified.

Throughout the trial it was conceded by the plaintiff that the cash premium was never paid, but she insisted that the requirement that it should be paid before the delivery of the policy was waived by the general agents of the defendants, and the prayer presented by her counsel embodied most or all of the evidence introduced to prove that theory. Omitting unimportant words it was to the effect following: That if the court shall find that the application was made by the husband of the plaintiff through the general agents of the defendants, and that the defendants thereupon executed the policy and sent it to their general agents, and that the latter, upon the receipt of the policy, forwarded and delivered the same by mail to the applicant, who, in obedience to the directions of the said general agents, executed and remitted to them the premium notes as provided in the policy, and that the person whose life was insured died at the time alleged, whereof the defendants received notice prior to the institution of the suit, and refused to pay the sum insured solely upon the ground that the policy was not in force, and shall further find that said general agents did not demand immediate payment of the cash premium, neither at the time of the application nor at the time the policy was sent to or received by the person whose life was insured, but agreed with him to call upon the person named in the evidence for the same when to them it should seem proper so to do, and that said general agents waived the payment of said cash premium for several months, and treated the policy as an executed contract, then the plaintiff is entitled to judgment.

Assume the facts to be as stated in that prayer and found by the Circuit Court, the court here entertains no doubt that they are sufficient to support the judgment, which is *the only*

*question* raised by any special finding. Beyond all doubt they show a waiver, and it may be proper, in view of the circumstances, to remark that the evidence reported in the record, if it could be re-examined, is even more persuasive and convincing to that effect than the statement of the plaintiff or the finding of the Circuit Court.

Evidence of the most convincing character is reported showing that it was the custom of the agents to give credit in certain cases to persons with whom they were well acquainted and knew to be responsible, and not to call for the money at the time the policy was delivered; and one of the instructions given to such agents affords a strong presumption that the custom was known to the company, as the instruction states that agents must not deliver policies until the whole premiums are paid, as the same will stand charged to their account until the premiums are received or the policies are returned to the office. Such evidence, however, cannot be re-examined, as this court is confined to the special finding and the rulings of the Circuit Court.

Attempt is made in argument to show that general agents have no power to waive such a requirement or to deliver the policy to the insured without first exacting the payment of the cash premium, but the court here, in view of the circumstances of this case, is entirely of a different opinion.*

Where the policy is delivered without requiring payment the presumption is, especially if it is a stock company, that a credit was intended, and the rule is well settled where a credit is intended that the policy is valid though the premium was not paid at the time the policy was delivered, as where credit is given by the general agent and the amount is charged to him by the company the transaction is equivalent to payment.†

Premium notes were given in this case, and it must be

---

\* Boehen *v.* Insurance Co., 35 N. Y. 131.

† Goit *v.* Insurance Co., 25 Barbour, 189; Sheldon *v.* Atlantic F. & M. Insurance Co., 26 New York, 460; Wood *v.* Insurance Co., 32 Id. 619; Bragdon *v.* Insurance Co., 42 Maine, 262; Trustees *v.* Insurance Co., 18 Barbour, 69; S. C , 19 New York, 305.

held, under such circumstances, that the insurance company assumes a reciprocal obligation where there is no evidence to impeach the *bonâ fides* of the transaction.*

Conditions, it is sometimes said, cannot be waived even by a general agent, but the decisive answer to that suggestion in this case is that the policy, when properly construed, does not contain any absolute condition that it shall not attach or be operative unless the cash premium is first paid by the insured, and in the absence of any such positive condition in the policy it is not necessary to enter upon a discussion of that topic.

JUDGMENT AFFIRMED.

---

* Whitaker *v.* Insurance Co., 29 Barbour, 319; Post *v.* Ætna Insurance Co., 43 Id. 351; Com. M. Ins. Co. *v.* Union M. Ins. Co., 19 Howard, 323.