EAST TEXAS FIRE INSURANCE CO. v. J. A. MIMS.

(No. 775, Op. Book No. 2, p. 442.)

APPEAL from Kaufman County. Opinion by QUINAN, J.

*Statement of the case.* The agent of the insurance company solicited Mims to take out a policy in his company. Mims told him he did not have the money to pay the premium. The agent said it made no difference, as he represented a wealthy company, and it was perfectly willing to take notes drawing ten per cent. interest. Mims then took the policy on his property for three years, and gave his negotiable promissory note for the premium for $31.56. One stipulation in the policy was that "the company shall not be liable until the actual payment of the premium." Another was that "it (the policy) may be canceled at any time on giving written or verbal notice to that effect," etc. The note of Mims was not paid at maturity, and the agents to whom it was sent for collection returned it uncollected. Defendant never refused, but simply failed, to pay the note. He was never notified that his failure to pay avoided the policy, nor was demand made upon him to return the policy or pay the note. The amount could have been collected of him by suit. The insurance company did what is called a note business, that is, taking notes for premiums, and the secretary of the company says: "It would exercise a discretion when the notes became due whether they would cancel the policies, for sometimes, by not canceling, they would get the full amount of the premium, when if they were to cancel they would have to give the notes up, and thereby lose the premium for the time they had already carried the policy." The loss by fire occurred after maturity of the note.

§ 1323. *A policy of insurance remains in force until canceled for non-payment.* It seems now to be established doctrine that a condition in the policy, to the effect "that the company shall not be held liable until the actual payment of the policy," may be answered that where credit has in fact been given, the policy remains in force until canceled for non-payment of the premium; that the very fact of the delivery of the policy without prepayment of the premium establishes *prima facie* the fact that credit had been given. [Latoix v. Germania Ins. Co. 27 La. Ann. 113; Wilson v. Herkimer Ins. Co. 6 N. Y. 53; Wood on Insurance, 862; Mead on Ins. 434.] And where a credit is intended, a policy is valid though the premium be never paid. [Miller v. Life Ins. Co. 12 Wall. 285.] So where the agent of the insurance company gave an assurance that "the payment of the money" on delivery of the policy "made no difference," this was a waiver of the condition. [Bragdon v. Appleton Mut. Ins. Co. 42 Maine, 259; Thompson v. Mutual Life Ins. Co. 2 Ins. L. J. 422; May on Ins. 435; Young v. Hartford Fire Ins. Co. 24 Amer. Repts. p. 786; 46 Iowa, 277.]

§ 1324. *A negotiable note is payment of the premium on a policy of insurance.* In the present case, as a negotiable note was given and received by the agent of the insurance company, this was a sufficient payment of the premium. [May on Ins. 412; 100 Mass. 500.] The company did a note business. After the note became due, Mims was more than once applied to for payment, and this shows not only that the company did not hold the policy invalid by reason of the non-payment of the premium at the delivery of the policy, but that it considered the policy still valid though the note had not been paid at maturity. It held the note as a debt due by Mims, retained possession, had the right to assign or sue upon and recover the amount of it, which could have been made out of Mims. Mims could not avoid a recovery on the ground that the policy was not binding upon the com-

pany for the want of prepayment of the premium, nor can the company be permitted to say that the policy was or is invalid while it still held Mims responsible upon the negotiable note given by him for the premium.    If it desired to terminate its liability because of the non-payment, it could have done so by notifying Mims of such intention, and not otherwise.    Failing to do this was a virtual assurance to Mims that his property was still covered by the policy.    His property being destroyed, it would seem near akin to fraud to defeat his recovery for the loss by reason of the fact that his premium, not having been paid, his policy was void from the beginning, though he had been assured "that the payment of the money made no difference, or that it was void for non-payment at the maturity of the note, when the acts of the company had shown they still held it as a valid debt against him, and that his property was still insured.    [Trustees of Baptist Church v. Brooklyn Fire Ins. Co. 19 N. Y. 305; Bowman v. Agricultural Ins. Co. 59 N. Y. 521; Westchester Fire Ins. Co. v. Earle, 33 Mich. 143; Ins. Co. v. French, 2 Con. Sup. Ct. 321.]    The case of Kerns v. Mutual Ins. Co. 6 Reporter, 180, does not conflict with this conclusion, because the note in that instance stipulated expressly "that it was understood and agreed that if this note shall not be paid at maturity, said policy shall be canceled and become null and void."    The court held that it was a contract of even date, qualifying the terms of the policy, and an agreement that the policy shall be without effect and surrendered in case the note be not paid.    And in Nedrow v. Farmers' Ins. Co. 2 Reporter, 50, the policy expressly stipulated that a note given for the cash premium remaining unpaid at the time of the loss, the policy should be considered void.

October 25, 1880.    Affirmed.