## WILLIAMS v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, ENGLAND.

### No. 7070.

Circuit Court of Appeals, Fifth Circuit.

Feb. 28, 1934.

Rehearing Denied April 4, 1934.

M. J. Arnold, of San Antonio, Tex., for appellant.

Marshall Eskridge and Josh H. Groce, both of San Antonio, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Edgar Allan Williams, brought suit to recover on a policy of accident insurance, issued to him by appellee, Employers' Liability Assurance Corporation, Limited, to recover $10,000 as due under the terms of the policy for the loss of his left hand through accident. Error is assigned to the action of the court in directing a verdict for defendant.

There is no conflict in the evidence except as to one material point. The following facts are not in dispute. The policy sued on had been issued to Williams. While hunting on the afternoon of October 13, 1932, he received a gunshot wound in his left hand which necessitated its amputation shortly thereafter. If the policy were in force, he was entitled to recover the amount sued for. With regard to the issuance of the policy the following appears: Williams communicated with George C. Eichlitz & Co. and made it known that he was interested in taking out insurance. Eichlitz & Co. were general

agents for appellee in San Antonio, with authority to countersign and issue accident policies, without first referring the application to their principal, and had blanks for that purpose in their office. They sent one of their employees, Mitchell, to interview Williams. Williams and he discussed the subject of insurance and various policies. Williams was interested in the form of policy subsequently issued. The annual premium for this policy was $68. Williams told Mitchell that he was forming a new company and to come back maybe 15 days later and he would give him the insurance. Mitchell insisted that he take the policy then and said he would take a note for it. Williams said he would rather not have any notes outstanding, would rather wait, and, when he consummated his deal, he would pay cash. Mitchell then suggested that Williams take the policy and give him a postdated check. He said that the agency could handle it for 45 days, and that they would bill him after the 25th of that month for the insurance and it would not be due until the latter part of October or the first part of November, if he wanted it carried that long. Williams said he did not need 45 days, and it was then agreed that he could make out a postdated check for the premium. Williams signed an application for the policy on September 17, 1932, and gave Mitchell a check on the National Bank of Commerce of San Antonio, payable to Eichlitz & Co. or bearer for $68, the amount of the premium. The check was postdated October 13, 1932. Mitchell was told by Williams that he had no account in that bank at that time, but expected to make a deposit there in time to take care of the check. The check was accepted under these conditions by Mitchell and by Eichlitz & Co., after Mitchell had reported to Dieter, one of the firm. The premium was charged to Williams on the books of Eichlitz & Co. on September 17, 1932, and the policy was delivered by Mitchell a few days later. Eichlitz & Co. close their books on the 25th of each month and make returns to their principals for the premiums collected within the preceding 30 days. Eichlitz & Co. sent Williams a bill on September 26, 1932, dated the same day, for the premium. The check was credited to Williams on October 13, 1932, and was put through for collection on that day by the cashier of Eichlitz & Co. It was dishonored. Previous to that, on the morning of the 13th of October, Williams had a telephone conversation with Mitchell. It is with regard to this conversation that the only conflict in the testimony appears.

Williams testified: That he telephoned to Eichlitz & Co., inquired for Mitchell, and subsequently got in touch with him. He asked Mitchell as to the date of the check he had given as he was in some doubt as to whether it was dated the 13th or the 15th; that he told Mitchell if the check was dated the 15th it was all right, but if dated the 13th he would like an extension to the 15th; and that Mitchell agreed to this extension.

Mitchell testified as follows: That Williams asked him if the check was due and payable on the 15th; that he told him he thought it was, but he could not tell the exact date, as he was not in his office; that as soon as he returned to his office he would ascertain the date of the check and let him know; that Williams said, if the check was payable on the 15th, Saturday, to let it go through; that he (Williams) did not ask for any extension if it was not payable on the 15th; that he did not undertake to grant Williams any extension if the date it was payable was not the 15th and did not give him any definite information as to when the check was due; that he went to the office at 12 o'clock and asked the bookkeeper the date the check was due and she informed him it was the 13th and it had already gone through; that he attempted to get in touch with Williams by telephone and could not, was told he was not in his office; that he undertook to get in communication with him the next morning, went to his office, found Williams was not there, and was informed that he had had an accident while hunting the day before and was in the hospital.

With regard to the transaction, Dieter, the member of Eichlitz & Co. to whom Mitchell reported, testified: That he had approved the taking of the postdated check, and the firm issued the policy without reporting it to the home office; that in the customary way they would collect the premium and in due course remit to the home office its portion; that settlement would have been made with the home office in the early part of December, had the check been collected; that Mitchell was their contact man and he sent him to interview Williams; that it was the duty of Mitchell to make arrangements about the paying of the premium, to a certain extent; that the entire subject-matter of the premium, how it should be paid, the delivery of the policy, and the writing up of the application were all transacted with Williams by their office through the medium of Mitchell.

In directing the verdict, the District

Court, as appears from a transcript of his remarks in the record, was of the opinion that the burden rested on plaintiff to show that Mitchell was authorized by the defendant to extend credit for the payment of the premium; or that he had been held out as having that authority with regard to the extension; and that there was no evidence in the record to sustain this burden. We disagree with him as to his conclusions on the facts. Appellant was entitled to the benefit of all the evidence before the jury, whether produced by himself or the defendant, to sustain the burden imposed upon him.

■ The policy is in very simple form. It does not require payment of the premium before delivery. There is no provision that would automatically lapse the policy for non-payment of the premium. It was for one year only, and contains the provision that the insurer might cancel it at any time, upon written notice, returning the unearned portion of the premium, but it is shown that nothing was done to cancel the policy before the accident. From the evidence there is no doubt that Eichlitz & Co. had authority to issue the policy and to extend credit for the payment of the premium. The answer confirms this, as it sets up the defense that Williams had given his postdated check, dated October 13th, for the amount of the premium; that it was dishonored that day; and that, the premium not having been paid on the due date, October 13th, there was no consideration, and the policy became null and void. Since Eichlitz & Co. had authority to give credit, they also had authority to extend the time for payment beyond the date first agreed upon, and that they did so could be proven by parol. Miller v. Life Insurance Co., 12 Wall. 285, 20 L. Ed. 398; Knickerbocker L. Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689.

■ It is also clear that Mitchell was the accredited representative of Eichlitz & Co., sent by them to Williams with authority to arrange for the payment of the premium, and not a mere soliciting agent acting on his own initiative. The postdated check was simply a token. There was no fraud involved, and all the parties knew it was worthless unless a deposit should be made by Williams in time to cover it. According to the undisputed evidence, Mitchell had authority to give credit for at least 30 to 45 days. Payment of the premium was not required before the delivery of the policy. The risk attached when the policy was delivered. If the accident had occurred between that date and the 13th of

October, liability on the policy would have been established. There is very little doubt that if the accident had not happened Eichlitz & Co. would have further extended the time for payment of the check in order to collect the premium.

■ It cannot be said that on the record the evidence so clearly preponderated in favor of defendant that as a matter of law there was nothing for the jury. There was a conflict in the evidence as to whether Mitchell had agreed that the check would be held to the 15th before presentation. This was a question for the jury. There is little doubt, if any, that Mitchell had authority to grant this extension or that he had been held out to Williams as having that authority. If he did not have it, he should have so told Williams when communicated with on October 13th. This was also a question for the jury.

It was error to direct a verdict for the defendant. It follows that the judgment appealed from must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.