### MORRELL v. PRUDENTIAL INS. CO. OF AMERICA.

No. 234.

Circuit Court of Appeals, Second Circuit.

March 4, 1935.

Mackenzie, Smith & Michell, of Syracuse, N. Y. (Charles E. Spencer, of Syracuse, N. Y., of counsel), for appellant.

Bond, Schoeneck & King, of Syracuse, N. Y. (Clarence R. King and Lyle W. Hornbeck, both of Syracuse, N. Y., of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action to recover upon a policy of life insurance in the amount of $5,000, alleged to have been issued by the defendant. The policy insured the life of John C. Morrell, and was made payable to his wife, Margaret C. Morrell, the plaintiff in this action.

Morrell was a New York Central brakeman. On March 29, 1933, he signed an application for life insurance. The policy was delivered on April 3, by Kittell, an assistant manager of the defendant, to one Quinlan. On April 5, Morrell suffered severe injuries through an accident, received in the course of his employment, which resulted in a crushed left arm and left shoulder, broken ribs, and punctured lung. He was taken to a hospital for treatment, and there died on the 8th of April from the foregoing injuries. His brother-in-law, who knew of his injuries, came to Quinlan's office on April 6, paid the premium in cash, and received the policy. The facts about Morrell's injuries were not disclosed to Quinlan, and it was conceded at the trial that, when the premium was paid, Morrell was not in the state of health described in the application.

Quinlan was a regular agent of the Massachusetts Mutual Life Insurance Company. That company did not insure railroad brakemen, but the Prudential Insurance Company did. Accordingly, Quinlan, who had interested Morrell in life insurance, saw Kittell, who was in charge of the office of the Prudential in Syracuse, and obtained from him the application blank which Morrell signed. The application contained the following clause:

"I * * * agree that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained and that UNLESS the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the Company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application."

On the reverse side of the application was a form entitled: "Agent's General Report," which was filled out and signed: "Robert F. Wright, Memo Broker, by W. H. Quinlan." Wright was the general agent of the Massachusetts Mutual, but had a license from the Prudential to do a brokerage business. Quinlan thereafter brought to Kittell the completed application which, among other things, recited that the person to be insured appeared to be in good health.

On the morning of April 3, Kittell telephoned Quinlan that the policy had reached his office. Quinlan testified:

That thereafter he went to Kittell's office, and "Mr. Kittell said, 'The Morrell policy is here and it is o. k., as applied for,' * * * He handed me the policy and said, 'He is covered for five thousand dollars, and I will look to you for the payment.'

"I said, 'There is no cause to worry about this premium being paid.'"

Quinlan said that on the day he got the policy from Kittell he told Morrell that his policy had come through and "everything

was o. k.," and asked the latter when it would be convenient for him to receive the policy, to which Morrell replied: "I am going out this afternoon and I will take care of it in a day or two."

At the time Lynch, the brother-in-law of Morrell, paid the first premium on April 6, Quinlan turned over the policy to Lynch and took the premium up to the office of the Prudential, where he was given a receipt by the cashier of the insurance company. On April 7 Quinlan first learned, through the newspapers, of Morrell's injuries. He at once got in touch with Mrs. Morrell and Lynch, went to the Prudential office at Syracuse with the latter, taking the policy with him, reported to Kittell what had happened, and left the policy with him. The Prudential took the position that the policy had never been lawfully delivered and was not in force owing to default in the payment of the first premium. It attempted to return the amount of the premium which Lynch had paid and the company had received in ignorance of Morrell's injuries, but the plaintiff refused to accept it and brought this action to recover upon the policy.

The rate book and instructions to agents issued by the defendant contained the following provisions:

"The policy by its terms constitutes a receipt for the first premium and ordinarily should not be left with an applicant unless the full first premium has been paid within the time allowed for its delivery. In exceptional cases, a policy may be left with an applicant for a few days for purposes of inspection, providing receipt on form 1565 is obtained and filed in the District Office.

"A representative who fails to collect the premium or to obtain form 1565 will be held responsible for the amount of the premium."

The policy contained a copy of the application and provided that:

"Modifications, etc.—No condition, provision or privilege of this Policy can be waived or modified in any case except by an endorsement hereon signed by the President, one of the Vice Presidents, the Secretary, one of the Assistant Secretaries, the Actuary, the Associate Actuary or one of the Assistant Actuaries. No modification or change shall be made in this Policy except such as is in accordance with the laws of the State in which the same is issued. No Agent has power in behalf of the Company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information."

Upon the foregoing record Judge Bryant, who was in charge of the trial, directed a verdict for the defendant, and, from a judgment entered on that verdict, the plaintiff has taken this appeal. The question before us is whether there was any evidence of a waiver by the defendant of the condition in the application that the policy should not take effect unless it was received by the applicant and the first premium was paid while his health was the same as disclosed in the application.

The policy here contained a provision that no condition or provision could be waived except by an indorsement thereon, signed by certain specified officers of the insurance company, and the further provision that it should not take effect until the full first premium thereon was paid while the health, habits, and occupation of the appellant were those described in the application.

In MacKelvie v. Mutual Ben. Life Ins. Co., 287 F. 660, we held that provisions in a life insurance policy that it would not take effect unless the first premium was paid and that "agents" were "not authorized to make, alter, or discharge contracts" were valid, and that a delivery of the policy by an agent without collecting the first premium was not a waiver of the condition requiring payment thereof before the contract should become effectual. See, also, Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 559, 34 S. Ct. 186, 58 L. Ed. 356; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Dodd v. Ætna Life Ins. Co., 35 F.(2d) 673 (C. C. A. 6); Curtis v. Prudential Ins. Co. of America (C. C. A.) 55 F.(2d) 97; Commercial Standard Ins. Co. v. Garrett, 70 F.(2d) 969, 974 (C. C. A. 10); Ætna Life Ins. Co. v. Johnson, 13 F.(2d) 824 (C. C. A. 8).

The appellant relies on Miller v. Life Insurance Company, 79 U. S. (12 Wall.) 285, 286, 20 L. Ed. 398, and Smith v. Provident Sav. Life Assur. Soc. (C. C. A.) 65 F. 765. In the first case the book of instructions to agents provided:

"Agents must not deliver policies until the whole premiums are paid, as the same will stand charged to their accounts until the premiums are received, or the policies returned to the office. * * *

"Agents are not authorized to make, alter, or discharge contracts, waive forfeitures, * * * or bind the company in any way. * * *"

At the close of the policy it was provided that:

"The policy of assurance hereby applied for shall not be binding upon this company until the amount of premium as stated therein shall have been received by said company, or some authorized agent thereof, during the lifetime of the party therein assured."

Notwithstanding the foregoing provisions, the agent delivered the policy, taking promissory notes for a part and depending upon the assurance of a cash payment from one Scott, a third party, for the balance. The application for the policy recited that the insured wished to pay the premium partly in cash and partly by note. It was sent to the home office of the defendant, and the policy was issued and delivered to the insured by the general agent who took notes for part of the premiums with the sanction of the company, and relied upon Scott to make the payment in cash, which he never made. The company charged the premium to the agent upon delivery of the policy. The court held that the company had waived the cash payment and was liable for the policy.

It is to be noted in the foregoing case the premiums were charged to the agent by the company, that the court relied upon the power of general agents to waive provisions in the policy, and that there was "evidence of the most convincing character" (page 303 of 12 Wall.) "that it was the custom of the agents to give credit in certain cases to persons with whom they were well acquainted and knew to be responsible."

There was no evidence that the premiums were charged to the agent in the present case as they were in Miller v. Life Insurance Company, 79 U. S. (12 Wall.) 285, 20 L. Ed. 398, and in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 361, 22 S. Ct. 133, 153, 46 L. Ed. 213, the Supreme Court held:

"That it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered."

In Smith v. Provident Sav. Life Assur. Soc. (C. C. A.) 65 F. 765, 767, there was a provision in a contract of agency that "Agents crediting or remitting premiums not actually received do so at their own risk, and must look to the policy holder for reimbursement." The policy was delivered to the insured by a general agent of the company, and the insured died without payment of the first premium. It was held that the question of authority of the general agent was one for the jury in view of the provisions of the contract of agency and of the exclusion of evidence offered by the plaintiff that it was the practice of defendant's general agent to give credit on first premiums. There was a provision in that policy that it was not to go into effect until the first premium had been actually paid during the lifetime and good health of the insured, and that no agent was authorized to make, alter, or discharge the contract or to waive any forfeiture thereof or to receive for premiums anything except cash.

In the Smith Case there was an attempt to prove that the company knew of the practice of extending credit. Here there was no such evidence, and the language of the instructions to agents in the present case certainly did not permit any delivery of the policy without payment of the first premium. It provided that in exceptional cases the policy might be left with an applicant for purposes of inspection, if a receipt on form 1565 should be obtained. The portion of the instructions which provided that a representative who failed to collect the premium or to obtain form 1565 would be held responsible for the amount of the premium was doubtless inserted to provide for cases where in spite of the rules forbidding such conduct the company might, through some mischance, though without warrant, be held to have issued a valid policy. In such cases the provision would hold the agent for the amount of the unpaid premium. Apparently the clause was merely inserted ex abundante cautela and in no way controverted the prohibition against delivery of a policy without collecting the first premium.

It seems to us perfectly clear: (1) That no agent had any authority to deliver the policy without payment of the first premium; (2) that there was no proof that Kittell or Quinlan, or Morrell had any intention of using credit for the first premium. Lynch made the payment without disclosing the condition of the insured in the hope of giving the policy vitality while Morrell was still living. In view of the terms of

the contract, that could not be done. We hold that the plaintiff is barred by the failure of the deceased to pay the first premium while his health was the same as described in the application.

Judgment affirmed.