STEPP v. NATIONAL LIFE, &c., ASSOCIATION.

1. ADMISSIONS BY PLEADINGS—PROOF.—There is no error on the part of the trial judge in failing to require proof by plaintiff of matters alleged in the complaint and admitted in the answer.

2. IBID.—NON-SUIT—FURTHER TESTIMONY.—On the close of plaintiff's testimony in chief at the trial, in an action on a life insurance policy, the defendant moved for a non-suit on the ground that the policy had not been put in evidence.    The trial judge then permitted the plaintiff to introduce the policy.  *Held*, that this was within the judge's discretion ; and, moreover, the policy having been made a part of the complaint by exhibit, and admitted by the answer, proof of it was unnecessary.

3. PRODUCTION OF POLICY—PRESUMPTION.—The introduction at the trial of the policy sued on by the beneficiary, raises a presumption, subject to rebuttal by defendant, that the terms of the policy have been complied with.

4. HEARSAY EVIDENCE.—An agent of an insurance company at the home office cannot testify to matters which passed between the insured and the agent of the company at the home of the assured, at a distant point, as to the taking of a note for the premium and its non-payment at maturity, as these matters could have been known to the witness only by hearsay.

5. IBID.—OPINION-EVIDENCE.—An agent of an insurance company at the home office, who knows nothing of his own knowledge as to the conditions of an insurance except that which the policy discloses, cannot testify as to the terms and conditions of the insurance, and the effect of the non-payment of a premium note, and whether the policy was in force when the

insured died, as such testimony would be opinion as to the meaning of the policy, or else hearsay.

6. Evidence—Insolvency.—In answer to a general interrogatory, "If you know anything further that would benefit the defendant, declare the same fully," the witness answered at large as to the custom of the company, its instructions to agents, and the notification sent to policy-holders who failed to pay their premium notes at maturity, and that this course was pursued in this case. *Held*, that this answer was properly stricken out as irrelevant.

7. Evidence—Conditional Cross-Interrogatories.—The plaintiff having objected to certain direct interrogatories propounded by defendant to a witness to be examined by commission, and then propounded cross-interrogatories upon the same matters, to be submitted in case such objections were overruled, there was no error, after sustaining the objections to these interrogatories in chief, in granting plaintiff's motion to strike out the cross-interrogatories and the replies thereto.

8. Ibid.—Administration—Insolvency.—One of the issues in the case being whether a note of the insured for premium on a policy of insurance was accepted as payment, testimony as to the insolvency of the insured at the date of the note was irrelevant. Nor would the certificate of one probate judge prove that there was no administration on the estate of the insured, nor would the certificate of one auditor, as to his tax return for that year, show insolvency.

9. Ibid.—Basis for Contradiction.—Under this same issue, the defendant's agent and witness, who delivered the policy, was properly asked by plaintiff as to like arrangements with two others, and whether he had told them that he had taken the note in question as payment, the purpose being to lay the basis for a contradiction of this witness.

10. Discharge of Jury.—A case being withdrawn from the jury, the jury were properly discharged.

11. Decree Written by Counsel.—It is not error in the Circuit Judge to adopt and file as his decree that which he directed the successful counsel to prepare according to instructions.

12. Withdrawal from Jury—Waiver.—While the trial judge may not, of his own motion, withdraw from the jury the trial of issues arising in an action at law on a contract, yet where it is done on the demand of one of the parties, such party cannot, on appeal, question the right of such withdrawal.

13. Decree—Separate Statement.—The Circuit Judge should always state his findings of fact and conclusions of law separately, but his failure to do so furnishes no ground for an appeal.

14. Settlement of Case—Appeal.—This court cannot interfere with the statement of events occurring at the trial, as declared by the Circuit Judge in his settlement of the case for appeal.

15. LAW CASE—FACTS—APPEAL.—Findings of fact by a Circuit Judge in an action at law, withdrawn from the jury and decided by him, are final, and cannot be reviewed in this court.

16. CONTRACT OF INSURANCE—PAYMENT OF PREMIUM.—A policy of life insurance called for the payment of quarterly dues and assessments, and declared that if not "paid on or before the several days hereinafter mentioned, * * * then, and in such case, this policy shall cease and determine." And after stating the amount of these dues and assessments, it further declared, "the first of which are due and payable upon the delivery of this policy, which does not take place until such amounts are actually paid." Nevertheless, the insurance company accepted the note of the insured, payable at a future date, for the first year's dues and assessments, and delivered the policy. *Held*, that the contract of insurance was valid.

17. IBID.—IBID.—WAIVER.—An insurance company may waive its own requirement of cash payment, as stipulated in its policy, and does waive it by accepting the note of the insured in lieu thereof.

18. IBID.—IBID.—IBID.—NON-PAYMENT OF NOTE.—And the policy not providing that the non-payment of such note at maturity or on demand should work a forfeiture of the policy, the beneficiary named therein was entitled to recover on the death of the insured within the year, notwithstanding his failure to pay the note at maturity or on demand thereafter.

19. IBID.—DEDUCTION—COUNTER-CLAIM.—But as the policy stipulated that all indebtedness by the insured should be deducted from the amount of insurance when paid, this premium note with interest should be credited on the amount of the claim ; and no plea of counter-claim was necessary.

20. IBID.—PLACE OF PAYMENT—RATE OF INTEREST.—The policy being payable in Washington City, it bore interest from its maturity at the rate of interest there established by law.

21. INSURANCE—PROOF OF LOSS—WAIVER.—Where an insurance company refuses to furnish blanks for proof of death on the ground that it denies liability, it thereby waives formal proof of death.

22. RULINGS ON CIRCUIT—APPEAL.—This court cannot consider questions not passed upon in the court below, but first raised on appeal.

23. NEW TRIAL NISI granted by this court.

Before WITHERSPOON, J., Greenville, August, 1891.

This was an action by Mallie U. Stepp against the National Life and Maturity Association of Washington, D. C. The policy was on the life of James M. Stepp, issued June 10, 1889, in favor of plaintiff, his wife. J. M. Stepp was declared in the policy to be of Laurens County, but he died in Anderson County, on April 2, 1890, to which place a letter was ad-

dressed to him before his death, and from which place his widow sent notice of death. His place of residence is not otherwise stated. Defendant offered in evidence a certificate from the probate judge of Anderson County, to show that no administration had been granted on Stepp's estate, and a certificate from the auditor of the same county, to show his tax returns for the year 1890.

A. E. Norris, the agent who procured the insurance, being on the stand as a witness for defendant, and having testified that he had not taken the premium note in question as payment, and that such note was his property, he was asked whether he had not at the same time made like arrangements with two others, Epps and Martin, and also told them that he had so settled with Stepp? Epps and Martin were not sworn in reply.

There is no testimony as to the rate of interest in Washington City. It is fixed by Statutes at Large of the United States, but this volume was not offered in evidence. Other matters are stated in the opinion.

*Mr. Isaac M. Bryan,* for appellant.

*Messrs. Benet, McCullough & Parker,* contra.

October 28, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. On the 5th day of June, 1889, James M. Stepp applied to the defendant for a policy of insurance for $2,000, and, on the 10th day of June, 1889, a policy was issued to him, payable to the plaintiff. On the 2d day of April, 1890, James M. Stepp died. Upon application to the defendant for the blank forms upon which to make up proofs of loss, defendant declined to furnish such forms, and, in the letter, dated 17th April, 1890, gave as the reason therefor, that the policy in question had been cancelled by the defendant on 1st December, 1889, and it was unnecessary to forward proofs of loss. On the 4th day of February, 1891, an action was brought by the plaintiff in the Court of Common Pleas for Greenville County against the defendant, to recover the amount of the loss under said policy of insurance.

The complaint alleged, amongst other things, that her husband and the father of her little children had been duly insured for her benefit to the amount of $2,000 by the defendant, and, in lieu of the cash to be paid for said policy, had accepted the promissory note of her said husband for the sum of $44.36, payable on or by the 1st December, 1889, in full of the first year's quarterly dues and assessments of said company under said policy of insurance; that, upon the execution by her husband of said promissory note, the agent of said defendant gave her said husband a receipt for the said sum of $44.36, in full advance yearly payment for a $2,000 policy in defendant's company, and that such receipt contained a refunding clause to the effect, that, "If the application should be rejected at the home office, the amount paid as above will be refunded," which receipt was in plaintiff's possession; that thereafter the defendant issued and delivered the policy for $2,000 in plaintiff's hands, as the beneficiary named therein, which was exhibited with the complaint as a part thereof, and as exhibit A; that such defendant had been notified promptly of the death of her husband, which occurred on the 2 April, 1890, but defendant refused to forward proofs of loss, claiming that such policy had been cancelled; that both her husband and herself had complied with all the conditions and stipulations required of them by said policy or contract of insurance; that defendant had not paid said $2,000, or any part thereof; and that the same, with interest from ninety days after the death of her said husband at seven per cent. interest per annum, was now due. Judgment therefor was prayed.

The defendant by answer admits the execution of the application for insurance, together with the execution of the note for the one year's annual premium; that the policy was duly issued; that the copy thereof with the complaint is correct; that the receipt was given; that the note was received by defendant; that the policy has not been paid; that notice was received of the death of the insured, and that defendant refused to forward blank forms for proof of loss; that the death loss has not been paid. But the answer denies all liability to pay the loss, and insists that the policy in question was cancelled

by the defendant on the 1st December, 1889, because the payment of the note by the deceased on the 1st December, 1889, was a condition to its continued existence after that date, and that such condition was included in the policy itself, in the note, and in the agreement of the insured with the defendant, and the assured, having failed and refused to pay such note at that date, was notified that the policy was cancelled.

The cause came on to be heard before Judge Witherspoon and a jury at the July term, 1891, of the court at Greenville.

After plaintiff had closed, defendant moved for a non-suit, because the plaintiff had not introduced the policy of insurance; the Circuit Judge allowed plaintiff to do so, and refused the motion. The defendant introduced testimony. The Circuit Judge withdrew the cause from the jury, deciding himself for the plaintiff. After judgment was entered, defendant appealed. While the grounds are numerous, yet, in order to be conscious of having considered every one of the many errors here presented, we will reproduce the same.

EXCEPTIONS TO RULINGS.—1. The presiding judge erred in refusing to grant a non-suit, because: *a.* The execution and delivery of the alleged receipt for premium note offered in evidence was not proved. *b.* The execution and delivery of\ the policy offered in evidence was not proved. *c.* There was no proof that the policy had not been paid. *d.* The presiding judge permitted plaintiff's attorneys to put the policy in evidence, after plaintiff's attorneys announced that they had closed, and after argument by defendant's attorney for non-suit, and without proving the execution and genuineness of said policy. *e.* The presiding judge erred in ruling, that the fact that plaintiff held the policy, raised the presumption that the terms had been complied with.

2. The presiding judge erred in striking out the 7th, 9th, 11th, 12th, 18th, and last, 21st, direct interrogatories, and the answers responsive thereto, inasmuch as the evidence related to and explained why the policy had not taken effect, because of the failure of plaintiff to perform certain conditions precedent, to wit., the payment of certain dues and the note given for premium.

3. The presiding judge erred in permitting plaintiff's attorneys to strike out the 22d, 23d, 24th, 25th, 26th, 27th, 31st, 33d, 35th, and 36th cross-interrogatories, and the answers responsive thereto, inasmuch as the witness having answered said cross-interrogatories, defendant became entitled to the benefit of the said answers.

4. The presiding judge erred in refusing to permit the defendant to prove the insolvency of plaintiff's husband at the time of the execution of the note given for premium.

5. The presiding judge erred in permitting plaintiff to introduce evidence of a conversation with one Epps, and with one Martin, inasmuch as said parties were not privies to the contract of said defendant with said plaintiff.

6. The presiding judge erred in discharging the jury empanelled in the cause, because there was no consent of the several parties to the said action, as provided by law, to such discharge of the said jury.

7. The presiding judge erred in allowing plaintiff's attorneys to formulate and write the decree in the cause, because by law the presiding judge is charged personally with the duty and responsibility of finding the conclusions of law and fact in the cause.

EXCEPTIONS TO DECREE.—1. The presiding judge erred in filing a general decree in the cause, inasmuch as the case was one for the recovery of money only, with issues of fact arising upon the pleadings, and there being no submission of the cause by the several parties to the action to the presiding judge, for his decision in writing, filed with the clerk, or orally, with entry of same in minutes of court, as required by law.

2. Because, even if the presiding judge had the power to file a general decree in the cause, the same is void and a nullity, inasmuch as: *a.* It is impossible to ascertain with certainty from the decree what are conclusions of fact and what are conclusions of law. *b.* Because the conclusions of fact and conclusions of law are not found at all. *c.* Because the conclusions of fact and conclusions of law are not found separately, as required by law.

3. The presiding judge erred in stating in the decree, that

"defendant's counsel insisted upon it (the case) being tried and determined by the court alone," and that defendant's counsel "moved that the case be withdrawn from the jury and be tried by the court, stating that it now appeared that there were no issues of fact upon which the jury were called upon to pass," and "at the close of the testimony the same motion was renewed," inasmuch as the said statements are inaccurate, inferential, and are not supported by the evidence in the cause, the official stenographer's report of the trial, and the minutes of the court, and because, as stated, tend to mislead the Supreme Court, and .put a construction upon what was actually said and done by defendant's counsel, different from that intended by defendant's counsel.

4. The presiding judge erred in stating in the decree, that "he (defendant's counsel) admitted that all of the allegations controverted by the answer had been proved." (1) Because no such admission was made by defendant's counsel. (2) Because there is no evidence to support such statement; and, further, because there is nothing in the record to support such statement.

5. The presiding judge erred in stating in the decree, "the company kept the note, or rather their agent did," because said statement is not supported by the evidence in the cause, in so far as it is meant that the agent kept the note.

6. The presiding judge erred in decreeing for the plaintiff, because it nowhere appears from said decree that, at the time of the application for the policy, and at the time of the issuing of the same, the said plaintiff was the wife of the deceased, J. McCullough Stepp.

7. The presiding judge erred in stating in the decree, that "there was no provision either in the note or the policy to the effect that, if the note was not paid at maturity, the policy should be cancelled," because said statement is not supported by the evidence or the policy.

8. The presiding judge erred in holding, "that the note of James McCullough Stepp was payment in full of the first year's quarterly dues and assessments under the said policy," and "that it was so accepted by the company," because the question in the cause is not simply one of payment, but of "actual pay-

ment,'' and because said note was accepted with the distinct agreement that the policy should be void, if said note was not paid at maturity, to wit, on the first day of December, 1889.

9. The presiding judge erred in holding, "that the provisions in the policy, to the effect that the policy should not take effect until the first premium was 'actually paid,' was waived by the company when they accepted the note, issued the policy, and put it in force," because: (1) The mere taking of the promissory note was not a waiver or abrogation of the terms of the policy, unless it (the waiver) was so declared and expressed either in the policy or the note. (2) Because the said policy was never in force, one of the terms thereof ("actual payment" of certain precedent dues) never having been complied with. (3) Because the plaintiff having based his right to recover in the complaint by alleging payment premiums, cannot now claim to recover by attempting to prove waiver of payment of premiums.

10. The presiding judge erred in holding, that the contract of insurance had taken "effect from the 5th June, 1889, to the 5th June, 1890, and that the provisions in said policy respecting forfeiture upon the non-payment of dues, relates to the payment of premiums other than those covered by the said note, because: (1) The contract of insurance never took effect, the precedent condition of actual payment of certain dues never having been performed. (2) Because the clause of forfeiture relates to all dues.

11. The presiding judge erred in decreeing for plaintiff the sum of two thousand one hundred and fifty 26–100 ($2,150 26–100) dollars, because: (1) By the terms of the policy, no interest was due on the amount of the risk, two thousand dollars ($2,000), inasmuch as no proof whatever, and no satisfactory proof, of the death of said insured was ever made and forwarded to the office of the said association defendant, in the city of Washington, D. C., and no evidence of death submitted until the trial of this cause, on the 31st day of July, 1891. (2) Upon the theory that plaintiffs are entitled to recover, the unpaid note of James McCullough Stepp, given for premium, and surrendered at the trial of this cause, should have been deducted from the amount

54—37

of the policy. (3) Even if the plaintiff is entitled to recover interest, by the terms of the policy (if any interest should become due), the same was to be calculated at the rate of six (6) per centum per annum, whereas in the decree the same is calculated at the rate of seven (7) per centum per annum.

12. The presiding judge erred in not holding and adjudging, that the first dues and premiums were not "actually paid," and that the policy never took effect.

13. The presiding judge erred in not holding and adjudging, that the said policy became forfeited for non-payment of the dues therein mentioned, and the note given for the premium, and that the same was duly and legally cancelled, and was not in force at the time of the death of the said Stepp, on the 2d of April, 1890.

14. The presiding judge erred in attaching any importance (as stated in the decree) to the retention by the company of the note given for premiums, after maturity, inasmuch as the note had never been negotiated, was brought into the court at the trial of the said cause, and formally surrendered to plaintiff's attorneys, and because formal notice had been given to the party of the cancellation of the policy.

EXCEPTIONS TO JUDGMENT.—1. The presiding judge, the "clerk for the Court of Common Pleas" for Greenville County, and the plaintiff's attorneys erred in finding and stating, in the judgment entered herein on the 21st day of August, 1891, that "a trial by jury having been duly waived" in said cause, and because said judgment contains said erroneous statements, to wit, "trial by jury having been duly waived" in said cause, inasmuch as there is no evidence to support such statement or finding, either in the record in the cause, the official stenographer's report of the trial of the cause, or the minutes of the court.

2. Because the judgment herein is not officially signed by the "clerk for the Court of Common Pleas" of Greenville County.

In our consideration of the several grounds of appeal, we will adopt the classification and mode of distinguishing the same of the appellant.

EXCEPTIONS TO RULINGS.—*1. a.* It is a cardinal rule, that whatever is asserted in the complaint and admitted in the answer is no longer an issue to be proved. Here the plaintiff in her complaint alleged the receipt for the premium note, and the defendant in its answer admitted the same. Hence, there was no error in the Circuit Judge not requiring the same to be proved, and, on that account, a non-suit should not have been granted. *b.* The same statement made in our consideration of *"a"* applies to *"b,"* for the execution and delivery of the policy in question was asserted in the conplaint and admitted in the answer. This suggestion of error cannot be sustained. *c.* It was also asserted in the complaint and admitted in the answer that the policy had not been paid. There was no error here.

*d.* The decisions of this court have established the right of the Circuit Judge to admit the proof of facts after a motion for non-suit had been based upon the absence of such facts in the testimony. Therefore, the Circuit Judge was invested with such discretion, and its exercise would not have been error; but in this case it was not necessary to introduce the policy, for it was incorporated in the complaint, as a part thereof, as exhibit A, and was admitted by defendant's answer, and such unnecessary admission by the Circuit Judge would furnish no substantial ground for exception.

*e.* There was no error in the Circuit Judge ruling that the possession of the policy by the plaintiff, who was the beneficiary thereof, raised the presumption that the terms had been complied with. This position of the Circuit Judge in no wise impinged upon the defendant's right to destroy by proof the effect of such presumption.

*2.* One of defendant's witnesses, George E. Eldridge, of Washington City, D. C., was examined by commission. Certain interrogatories in chief were objected to by the plaintiff. One of these was the 7th, couched in these words: "What were the terms and conditions upon which the said policy was issued and delivered?" The answer was: "Upon the warranty of the truth of the statements made in the application,

upon the condition of the actual payment of the first payment, while the applicant was in as good health as when application was made, and upon the condition that a certain promissory note, given by him in payment of the first annual premium, should be made on or before the first day of December of the then current year." The pertinency of the objection to this question, and its answer by the witness, is shown by the fact, that this witness never saw Stepp, the assured; that all that passed between the assured and the defendant was through one Norris, its agent, and witness, of his own knowledge, knew nothing of what did take place between the assured and said Norris. Therefore, if Norris repeated what took place between the assured and himself, it would not be competent for this witness to detail it; it would be "hearsay." Hence, the judge did not err in striking out the question and answer. Another interrogatory in chief objected to by plaintiff was the 9th, in these words: "State whether the said note was presented for payment at maturity, and whether the same was paid?" Answer: "It was presented for payment at maturity, and was not paid." This witness was in the city of Washington, D. C., while Stepp, the assured, resided continuously in Laurens County, in this State. The note given by Stepp for the annual premium, which note matured 1 December, 1889, was sent by defendant to Norris, its agent, for presentation. Witness was not in this State when note matured, and was not present at any demand for payment. Of course, this testimony was incompetent. The Circuit Judge did not err.

The next objection relates to rejection of 11th interrogatory: "State the consideration upon which the said policy was delivered to the said Stepp?" Answer: "That the note given for the first annual payment should be paid on or before the first day of December of that year." The policy was silent as to this note, as was the application for the insurance; the note was silent in its terms as to any forfeiture; no letters were received by the defendant from the assured; the local agent Norris alone saw the assured. Under these circumstances, how could this witness testify as required? He could not interpret the papers, for they were before the court,

and spoke for themselves. He could not tell what Norris knew. The question and its answer were properly disallowed. The next objection covers the 12th interrogatory and answer: "What was the agreement as to the effect upon said policy if the said note was not paid at maturity?" Answer: "That the policy should cease to be of force." Now, as before remarked, there was no agreement in writing as to this note, so far as the effect of its non-payment at maturity upon the policy was concerned. No communication was had by this witness with the assured in reference thereto. Therefore, it was not competent to hear his testimony, that assumed to bear upon this matter. The Circuit Judge did not err. The objection to the 18th interrogatory is next: "Was the said policy in force at the alleged time of the alleged death of the said Stepp—to wit, April 2d, 1890?" Answer: "It was not in force at said date." It was established that the defendant held the note of assured; assured held the policy and a separate receipt for the payment of the first annual premium. It was, therefore, incompetent for this witness to give his opinion upon the question of law involved and growing out of such a state of facts.

Lastly, as to the 21st interrogatory: "Do you know of any thing concerning the matters in question that may tend to the benefit of the defendant? If yea, declare the same fully and at large, as if you had been particularly interrogated concerning the same?" Answer: "All premiums on policies issued by the company (or association) are payable in cash, and no agent is authorized to take any thing but cash in payment of said premiums, and this condition is set forth plainly and fully in each contract issued by the company. In special cases, when the applicant represents that at the time it is inconvenient for him to pay the money, as a matter of accommodation and favor to him, he is allowed, with the approval of the home office, to give a short time note. The agent is always instructed in such cases to have the applicant fully understand that the continuance of the insurance depends upon the payment of the note, and that the taking of it is a special act of favor to him. Upon the failure of the payment of a note so taken as upon failure to pay any premium, the insurer is noti

fied of the cancellation of his policy, and is given the opportunity, if he will sign a warranty as to the condition of his health, and make immediate payment, applying at the same time for reinstatement of his insurance, to have the same put in force again.   In the great majority of cases, when the lapsed policy-holder does not wish to reinstate his insurance, the home office receives no reply to this notification.   Generally, one course of business in relation to a note is to send it, before maturity, to the agent, with instructions to use every effort for its cancellation, especially for the reason that, as the agent's compensation for his work depends upon the payment of the note, he is the person who would most likely collect it, if it was collectable. This was the course adopted in the case of the note of Mr. Stepp.''   Neither party to the appeal have developed with much care an attack on the one side or a defence on the other, of the ruling of the Circuit Judge in this particular.   A little care bestowed upon this matter will disclose the real objection here to consist in the attempt on the part of the witness, in his answer, to inject irrelevant matter into the testimony, and, of course, that is not to be desired, or admitted, if objection is made.

*3.* This ground of appeal has reference to certain cross-interrogatories, and the answers in response thereto, which, on motion of plaintiff's attorneys, the Circuit Judge ordered stricken from the testimony.   The ground upon which this action of the Circuit Judge is defended, is that certain interrogatories in chief were objected to by the plaintiff at the time the same were submitted, because they would enable the witness to introduce "hearsay" testimony, and the cross-interrogatories were only submitted by the plaintiff to this witness in case the Circuit Judge should hold the interrogatories in chief competent.   This was very proper.   And, of course, when the Circuit Judge held that the questions in chief were incompetent, it became necessary for the plaintiff to move to strike the answers to his cross-interrogatories from the testimony.

*4.* The question of the insolvency of the assured at the time he made his promissory note was not an issue in the case, and

the Circuit Judge was not in error in refusing to permit testimony as to such insolvency to be introduced. Besides, the character of the testimony offered was not decisive of such issue. That there was no administration upon Stepp's estate could not be proved by a certificate of a judge of probate of one county in a State to that effect. Nor would a certificate from one county auditor of the property returned by assured for taxation do so. There was no error here.

5. The testimony of the witnesses, Epps and Martin, was admitted by the Circuit Judge as laying the basis of a contradiction of defendant's witness, Norris. There was no necessity, from this stand-point, that any privity on their part to the contract of plaintiff and defendant should exist. There was no error here.

6. Whenever it is determined by the Circuit Judge that a cause is to be withdrawn from the jury charged with the trial thereof, the jury must be discharged. The power of the Circuit Judge under the law to take a case from the consideration of the jury will be discussed hereafter, under the next head, "Exceptions to Decree," under subdivision 3 thereof.

7. This exception suggests error in the Circuit Judge, in allowing the plaintiff's attorneys to prepare the decree that he signed. It is admitted that, after hearing the cause, the Circuit Judge announced in open court that he decided in favor of the plaintiff, and afterwards requested the attorneys of the winning side to formulate the decision. We can see why the appellant should prefer that the trial judge should write out his own decision; it might be that the statements of such judge, if announced in his own words, might be more in accordance with appellant's interests. But we are at a loss to see how this court can interfere. The judge decided for himself. Such decision involved the solution, against defendant, of all the issues involved in the action. The decision as prepared was adopted by the trial judge. If we are correctly informed, the duty of formulating the provisions of a decree are frequently devolved upon attorneys, after the principles upon which such decree is to be fashioned are previously

announced by the court, in the Circuit Court of the United
States. It is true, there, the judges scan such prepared decree
with great nicety; so we are obliged to conclude the Circuit
Judge did in the case at bar. We must, therefore, overrule
this ground of appeal.

EXCEPTIONS TO DECREE.—*1.* That the law provides for the
hearing of a cause and its decision by the Circuit Judge in
certain instances without the assistance of the jury,
there is no doubt. The Code of Procedure of this State
lays down the requirements to be observed in such cases
with great care: "Section 288. Trial by a jury in the Court of
Common Pleas may be waived by the several parties to an issue
of fact in actions on contract, and with the assent of the court
in other actions, in the manner following: 1. By failing to
appear at the trial. 2. By written consent, in person or by
attorney, filed with the clerk. 3. By oral consent in open
court, entered in the minutes." It must be apparent from
reading this section that provision is here made for the trial of
a cause by the court rather than a jury, in two classes of cases:
*first,* where the parties to an action, where there are issues of
fact, on a contract, either fail to appear at the trial; or by
written consent in person or by attorney, filed with the clerk;
or by oral consent in open court, entered in the minutes; and,
*second,* in actions other than on contracts, with the assent of
the court.

We interpret this statutory provision as denying to the judge
the power, of his own motion, to withdraw the trial of issues
of fact in actions on contracts from a jury. This right in the
Circuit Judge can only be exercised in the manner pointed out
by the statute. The difficulty to the appellant in presenting
this question arises from his own act; this difficulty, on his
part, arises from some positive action, on his part, whereby, it
is asserted by the respondent, he has concluded himself from
raising any question touching the conduct, in this instance, of
the Circuit Judge. It sometimes happens that a Circuit Judge,
on the motion of the appellant in the court below, rules a ques-
tion to be competent, when in law such question is not compe-
tent; or charges a request as the law in the case, when such

request is not the law. In such instances, the appellant is denied the right to canvass the correctness of such rulings of the Circuit Judge; in such instances, it is said, the appellant has established, for the purposes of his action alone, that as law which in reality is not the law.

Now, let us examine that part of the "Case" to which no exception has been taken by appellant as to its accuracy. The appellant here stands upon the notes of the stenographer that are a part of the "Case." In those notes we find this language: "Mr. Bryan submitted that there was nothing in this case to go to the jury," when the Circuit Judge overruled appellant's motion for a non-suit, and used this language: "And let the case go to the jury." To this Mr. Bryan excepted. "Mr. Bryan: I object to the case going to the jury, on the ground that the court errs in submitting it to the jury." The argument commenced. "Mr. Bryan, for the defendant, objected to the issues going to the jury, as it was a case for the judge. Mr. Parker (plaintiff's attorney) then addressed the jury. At the conclusion of his remarks, Mr. Bryan, for the defendant, addressed the jury. While in the midst of his remarks to the jury, the presiding judge stopped Mr. Bryan, and requested argument on the question, whether the issues were for the court. The question was then argued by counsel for both plaintiff and defendant. Messrs. Parker and McCullough, for the plaintiff, contended that there were issues to be submitted to the jury, and objected to the case being withdrawn from the jury. The judge overruled the objection, and announced that he would decide the case himself. Messrs. Parker and McCullough, for the plaintiff, asked that exceptions to the discharge of the jury be noted."

Now, does it not appear, from these quotations from the "Case," as limited to the stenographer's notes, that the attorney for appellant, in the court below, raised the very request, that the case be heard by the judge without the aid of the jury? But the "Case," as amended by the court, shows, in addition, as follows: "After the reading of the pleadings in the cause, defendant's attorney submitted that there were no issues of fact raised by the pleadings which should be left to

the decision of the jury, and moved that the cause be withdrawn from the jury, and be heard and determined by the court alone." Again: after the argument of the cause on its merits before the jury, "defendant's attorney renewed his motion for the determination and decision of the case by the presiding judge, without the assistance of a jury. He offered a written exception to the determination of the case by a jury. * * * Immediately upon the announcement of the decision of the judge upon this point, defendant's counsel moved that the jury be dismissed, which was done.

It would seem that the appellant should be precluded from raising this question now. The matter suggested, that such decision would give it into the power alone of the plaintiff, if he had lost on the Circuit, to have a new trial on this point, is quite true, but the appellant should remember that this course is the result of his voluntary action. And, speaking seriously, we cannot see how, in the case at bar, any suggestion of mistake in judgment of the appellant in this respect need be made or suggested, for, after all, if the jury had remained in charge of the cause, it would have been subject to the rulings on certain points of law by the Circuit Judge, which are practically decisive of the issues here involved.

2. The points of difficulty raised by *a*, *b*, and *c*, under this head, relate to the same matter, in different phases, it is true, but it is, practically, whether the conclusions of law and fact, respectively, should not have been stated separately by the Circuit Judge. Section 289 of our Code does provide: "Upon the trial of a question of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found and the conclusions of law separately; and upon a trial of an issue of law, the decision shall be made in the same manner, stating the conclusions of law." And this court confesses it were better that such provisions of the law should be adhered to. It assists counsel, and enables every one to lay hold of the exact apprehension of issues of fact and matters of law in the mind of the trial judge. So far as questions of fact, however, are concerned, this court could do nothing, even if such conclusions of fact should appear erroneous

to us, for this court is without authority, as it has been repeatedly held in our decisions, to canvass such findings, but in the matter of the law points, however, it would simplify matters very much. However, this matter is no longer an open question in this State, for we have repeatedly held that the provisions of the section in question are not mandatory. *Joplin* v. *Carrier*, 11 S. C., 329; *Briggs* v. *Briggs*, 24 *Id.*, 377. We must overrule this ground of appeal, in all these phases, *a, b, c.*

3. We are so much impressed with the earnestness of counsel in that portion of his argument relating to this subdivision of his appeal, that we have given it unusual consideration. It is natural for counsel in his commendable zeal for his client to regard with seriousness an apparent injustice to himself. This is proper and praiseworthy. Here, however, we would be unable to do aught for the appellant, as the law now stands, even if the Circuit Judge had made an unintentional mistake. The Circuit Judge is invested by law with the duty of passing upon any amendments submitted by the respondent to the "Case" as proposed by the appellant. The authority and responsibility is that of the Circuit Judge. There must be an arbiter provided when counsel fail to agree. The law, recognizing the fairness and integrity of the Circuit Judge, and realizing that he can best judicially pass upon events that occurred in his own presence and within his own hearing, has imposed this sometimes unpleasant duty upon him, and we are powerless in the premises. This ground of appeal is dismissed.

4. This ground of appeal relates to an alleged error in the finding of fact embodied in the decision of the Circuit Judge. Being such an alleged error, we are powerless under the law to pass upon the question. It is, therefore, overruled. 5. This ground of appeal and the remaining ones under this branch of the appeal, where they raise questions as to the correctness of the Circuit Judge on his findings of fact, must be overruled. Such has been the uniform practice of this court. The same line of decisions on a similar provision in the act of the United States, passed in

1865, whereby, upon the filing in the clerk's office of a stipulation in writing, signed by both parties, to an action in the Circuit Court of the United States, that a trial of issues of fact is taken from a jury and confided to the court, have been maintained. *Norris* v. *Jackson*, 9 Wall., 125; *Flanden* v. *Tweed*, *Ibid.*, 425; *Kearney* v. *Case*, 12 Wall., 275; *Miller* v. *Life Ins. Co.*, *Ibid.*, 285. Now, it should be borne in mind, that, in this transfer of the duty of a jury to a Circuit Judge, the same powers are given to the Circuit Judge in the State court by our own statute that is given to the Judge of the Circuit Court by the act of congress of 3d March, 1865, 13 Statutes at Large (U. S.), 501.

The law points here raised are exceedingly interesting, and have evoked in their solution by different courts much learning, and patient research into the authorities bearing upon principles so important in their just decision to both parties to such controversies. Life insurance has increased enormously in the past thirty years, and most of the cases decided by the courts of this and the mother country have been so decided within that time. We have no intention of reproducing very much of the learning on this very interesting branch of the law in this opinion, for we are admonished that its length is already too great. It may be as well to state, however, that with all the cases bearing on this subject it presents, in its last analysis, the old law of contracts, its novelty is only in the application of the well settled principles of the law governing the construction of contracts to an old enterprise that has received a wonderful expansion in late years.

To justly appreciate the application of the principles of the law here, it is necessary that we should state as briefly as is consistent with clearness, the admitted facts of this controversy. On the 5 June, 1889, James M. Stepp made his application to the defendant company, through its agent, A. E. Norris, for a policy on his life for $2,000, for the benefit of his wife, the plaintiff. The defendant issued policies upon the lives of its assured upon the plan of quarterly dues and assessments, paid in advance. But at the time the application for insurance was forwarded, the promissory note of the assured Stepp, covering the

dues and assessments for the year beginning with 5 June, 1889, and ending the twelve months next ensuing, was taken and forwarded to the home office of defendant. This note was as follows: "$42.00. Princeton, S. C., June 5th, 1889. On or before the first day of Dec. next date, I promise to pay to the order of A. E. Norris, Agt. N. L. & M. Ass'n of Washington, D. C., the sum of forty-two dollars at Princeton, S. C. Value received. James McCullough Stepp." On the same occasion, and as a part of this transaction, the following receipt was given the assured Stepp, to wit: "Princeton, S. C., June 5th, 1889. $44.36. Received of James M. Stepp forty-four 36-100 dollars, in full of advance yearly payment for a $2,000 policy in the National Life and Maturity Association, of Washington, D. C. If the application should be rejected at the home office, the amount paid as above will be refunded. Should he not receive the policy in ten days, he will please inquire for it of the secretary of the home office in Washington, D. C. A. E. Norris, solicitor."

The policy applied for was issued by the defendant, dated 10th June, 1889. By its terms, the life of the said Stepp was insured for $2,000, payable to the plaintiff, as his wife, ninety days from the receipt, at Washington, D. C., of satisfactory proof of the death of the assured, deducting from the $2,000 all indebtedness of the party to the association, together with the balance of any payments that would become due under the terms of the policy during the then current policy year. "Provided, that in case the said quarterly dues and assessments shall not be paid on or before the several days hereinafter mentioned for the payment thereof, at the office of the association, in the city of Washington, or to agents when they produce receipts signed by the president or secretary, then, and in such case, this policy shall cease and determine. * * * The quarterly dues under this policy are two 50–100 dollars, and the quarterly assessments six 86–100 dollars, the first of which are due and payable upon the delivery of this policy, which does not take place until such amounts are actually paid." The note given by Stepp for $42 was endorsed by "A. E. Norris,"

and also by "Geo. J. Easterly, Asst. Sec. the National Life and Maturity Association."

On 1st December, 1889, on demand made for the payment of the note, the same was not paid. Several other applications for payment of the note were made after 1st December, 1889. On 28th January, 1890, A. E. Norris, as the agent of the defendant, sent the letter, of which the following is a copy:

"COKESBURY, S. C., Jan. 28th, 1890.—Dear Sir: Please let me know what you propose to do about your note. We fully expected the money on Friday, Saturday, Monday, and to-day, but have neither money nor explanation. Please let me hear from you to-morrow. If you only knew my condition, I am sure you would make an effort and pay me, after I have waited so long. Please send to-morrow without fail, and oblige yours, (signed) A. E. Norris. (Addressed) Mr. J. M. Stepp, Honea Path, S. C." The assured died 2 April, 1890, and his widow, as beneficiary of the policy, sued the defendant.

It seems to us that these questions are suggested: 1. What was the contract of the parties? 2. Was it competent for the defendant to vary the terms of the policy, so as to substitute an annual premium in stead of the quarterly dues and assessments, such annual premium to be on a credit instead of an actual payment thereof, before the policy should be valid to protect against the death loss that occurred before the payment? In other words, could there be a waiver of these conditions? The language of Mr. Justice Bradley in delivering the judgment of the Supreme Court of the United States in the case of *Thompson* v. *Insurance Company*, 104 U. S., 258, well expresses the foundation of business success in life insurance: "Prompt payment and regular interest constitute the life and soul of the life insurance business." So we might enumerate rules that regulate and promote success in any other business in life. It is in the power of the farmer, the banker, the physician, the lawyer, the manufacturer, and others, to discard rules that bring prosperity and success in the business of each one named, and substitute others attended with more risk. There is no limitation upon their contractual powers so long as they move within the limits of the law. So in the matter of life insurance,

if the contracts of a life insurance company seem to fly in the face of danger, it is their business. If they choose to attempt to carry on their business on a credit in some cases instead of for cash on delivery of their policies on the lives of others, it is their right.

But let us see what the contract in this case was. When and upon what did the minds of the insurer and the insured meet? When the insured sent forward his application, accompanied by his note for the annual dues and assessments, reaching from 5 June, 1889, to 5 June, 1890, for a $2,000 policy, and obtained defendant's receipt for such annual dues and assessments for such insurance, that entered into and made up his proposition, and, on the other hand, when the insurance company acted on his application, accepted his note knowing of the receipt, and issued and delivered a policy to the insured, did not the minds meet? Was not every element of a contract in such transactions entered into between these parties? It seems so to us.

There being conditions in the policy hereinbefore recited at variance with a time loan to the assured, could they be waived? Unquestionably they could. *Insurance Company* v. *French,* 30 Ohio St., 240 ; *Thompson* v. *Insurance Company, supra ; McAllister* v. *Life Insurance Company,* 101 Mass., 558 ; *Miller* v. *Life Insurance Company,* 12 Wall., 302.

But the more serious question yet awaits us. Granting that the contract of the parties did not contemplate the payment in advance of the quarterly instalments, but that a credit was allowed for the annual dues and assessments, until 1 December, 1889, and that the insurance company could waive these periods of payment, what would be the effect of the failure to pay the note at maturity? Now, it will be remembered, that the terms of this policy in no wise made the payment of any note given for the annual dues and assessments a condition to the continuance of the insurance after the note matured, nor was there any condition inserted in the note, whereby it was agreed by the assured that the policy should be avoided if such note was not paid. This was the trouble in *Bradley* v. *Insurance Company,* 32 Md., 114, and *Thompson* v. *Insurance Company,* 104 U. S., 257. In this last case, Mr. Jus-

tice Bradley said : "First, it is contended that the mere taking
of notes in payment of the premium was, in itself, a waiver of
the conditional forfeiture ;" and for this reference is made to
the case of *Insurance Company* v. *French*, 30 Ohio St., 240. But
in that case no provision was made in the policy in cases of the
non-payment of a note given for the premium, and an uncon-
ditional receipt for the premium had been given when the note
was taken ; and this fact was specially adverted to by the court.
We think that the decision in that case was entirely correct.
But in this case the policy does contain an express condition to
be void if any note given in payment of premium should not
be paid at maturity. We are of opinion, therefore, that whilst
the primary condition of forfeiture for non-payment of the an-
nual premium was waived by the acceptance of the notes, yet
that the secondary condition thereupon came into operation,
by which the policy was to be void if the notes were not paid
at maturity."

The policy and the note in the case at bar being silent as to
forfeiture in case of non-payment of note for premiums at ma-
turity, are there any provisions of the law governing contracts
that will end the policy in such contingency? The two cases
that seem to us directly bearing upon this matter are those of
*McAllister* v. *Insurance Company*, 101 Mass., 558, and *Miller* v.
*Insurance Company*, 12 Wall., 302. In the first case just cited,
the facts were these : the policy named as its consideration a
premium already paid, and a like sum to be annually paid
during its continuance, and that it should not take effect until
the premium is paid. Such first premium was not actually
paid, for one-half was paid in cash and the other half secured,
to be paid by one note due at six months, and another note in
five years. In the policy, it was stipulated that in case any
premium due upon the policy shall not be paid at the day when
payable, the policy shall thereupon become forfeited and void.
At the maturity of the note which matured in six months, the
assured refused to pay the same, remarking that he would not
have any thing more to do with the company, and abandoned
the whole thing. The policy and the note did not provide that
the failure to pay the note for the premium at maturity should

work a forfeiture of the policy. The court decided, the assured having died a few months before the first year of the policy expired, that the company should pay the loss. In its judgment, stress was laid upon the absence from the policy and note, or either of them, of any provision, that a failure to pay the premium note at maturity should work an avoidance of the policy, and reference was made to the case of *Hodsdon* v. *Guardian Insurance Company*, 97 Mass., 144, where it was decided that it was legal for an insurance company to take notes for premiums on policies issued by it, and also its judgment differentiated the facts underlying its decision from those in the cases of *Pitt* v. *Berkshire Insurance Company*, 100 Mass., 500, and *Roberts* v. *Insurance Company*, 1 Disney, 355, in both of which the facts proved showed that it was expressly provided in the policy in question, in each of them, that in the event any note for a premium was not paid at maturity, it should render the policy null and void.

In the second case cited (*Miller* v. *Insurance Company*, 12 Wall., 302), these facts were set forth : That the insurance company had instructed its agents not to deliver policies until the premiums were paid, but that the agent delivered the policy in question upon the execution of certain notes for a part of such premium, and relied for the payment of the balance of the premium upon the assurance of a friend of the insured that he would pay such balance. The court held the company liable. In its judgment, it held, amongst other things, as follows : "Attempt is made in argument here to show that the general agents have no power to waive such a requirement (payment of premium), or to deliver the policy to the insured, without first exacting the payment of the cash premium, but the court here, in view of the circumstances of this case, is entirely of a different opinion. Where the policy is delivered without requiring payment, the presumption is, especially if it is a stock company, that a credit was intended, and the rule is well settled, when a credit is intended, that the policy is valid, though the premium was not paid at the time the policy was delivered, as where credit is given by the general agent, and the amount is charged to him by the company, the transaction is equivalent

56—37

to payment. Premium notes were given in this case, and it must be held, under such circumstances, that the insurance company assumes a reciprocal obligation when there is no evidence to impeach the *bona fides* of the transaction. Conditions, it is sometimes said, cannot be waived even by a general agent, but the decisive answer to that suggestion in this case is, that the policy, when properly construed, does not contain any absolute condition that it shall not attach or be operative unless the cash premium is first paid by the insured, and in the absence of any such positive condition in the policy, it is not necessary to enter upon a discussion of that topic."

In the work of Mr. May on Insurance, section 359, the author says: "The recital in the policy of the receipt of the premium is *prima facie* evidence of the payment, but only *prima facie*. Like all other receipts, it is open to explanation." The same author, at section 360, says: "But the prepayment of a premium may be waived, as by an assurance that the payment of the money on the delivery of the policy 'makes no difference.' And if the agent be authorized to receive the premium, an agreement between the applicant and the agent, that the latter will be responsible to the company for the amount, and hold the applicant as his personal debtor therefor, is a waiver of the stipulation in the policy, that it shall not be binding till the premium is received by the company or its accredited agent. The same is true if the language of the policy is that the premium shall be paid before the policy shall become valid. And if the policy require actual payment, and the assured offers to pay his check for the amount of the premium upon the bank where the agent also keeps his account," it will be good. "And, in fact, the delivery of the policy without exacting the payment, raises the presumption that a credit is intended, and is a waiver of the condition of a prepayment. The waiver may be inferred from any circumstances fairly showing that the insurers did not intend to insist upon the prepayment of the premium as a condition precedent. And so the non-payment of an annual premium due on a specified day may be waived," etc. Mr. Bliss, in his work on Life Insurance, at section 186 (edition of 1872), says: "A company may, however, waive the prompt

payment of the premium, as they may waive prompt compliance with any other condition, either by express agreement or by their acts."

But we cannot go further in these quotations. This court is satisfied with the conclusions of the Circuit Judge in regard to the construction he has given this contract of insurance, so far as the waiver by the defendant of the payment of the quarterly dues and assessments and the substitution of the note therefor, and also that such contract of insurance was not destroyed by the failure to pay the note at maturity.

It remains for us to dispose of a few more points raised by the appellant under the present heading of his appeal.

*11.* We think the Circuit Judge erred in giving judgment for $2,150.26. He should have deducted the amount of the note of James M. Stepp for the annual premium, with interest thereon at seven per cent. per annum from 1 December, 1889, until the date of his decision, 11th August, 1891. The policy that the plaintiff brings into court as the basis in large part of her rights against the defendant, expressly stipulates that any sum due by the assured under the policy shall be deducted from the amount of insurance to be paid. It was not necessary for the defendant to make a counter-claim for this note. The evidence of the plaintiff showed its existence. If suit were brought on a note for $500, and at the trial the note was proved, and a credit for $200 was also proved by the plaintiff, judgment could only be obtained for $300. This note, principal and interest, amounted to $47.25. But in addition to the foregoing, we are satisfied that the policy required the payment to be made at Washington City, D. C., and hence the rate of interest, six per cent., that there obtains, instead of seven per cent. per annum, should be computed on the $2,000 from the expiration of ninety days from the date of death, 2d April, 1890, up to date of judge's decision, 11th August, 1891. This difference in interest amounted to $17.26.

Defendant has also complained by his appeal that notice of the death of Stepp had not been made to defendant, as required in the policy. We have held in a previous case, that when the defendant company refuses to furnish the

blanks usual to prove death loss, and notifies the party in interest that the death claim will be contested, such defendant thereby waives such right to formal proof of death. *Dial* v. *Ins. Co.*, 29 S. C., 560.

EXCEPTIONS TO JUDGMENT.—*1.* This question has never been presented to or passed upon by the Circuit Judge. We have no authority to entertain its consideration. *2.* The same difficulty exists here as is pointed out in the few words devoted to the first subdivision of this head of the grounds of appeal here presented.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and a new trial granted, unless the respondent will enter a remittitur on the judgment appealed from, of the sum of sixty-four dollars and fifty-one cents, thus reducing said judgment to two thousand and eighty-five dollars and seventy-five cents, on or before the tenth day of November next; but in the event said remittitur is so entered on said judgment, then it is the judgment of this court that said judgment of the Circuit Court, so reduced in amount, be affirmed.