[No. 298.   On Rehearing, January 3, 1893.]

GEORGE LYNCH ET AL., APPELLEES, v. G. W. GRAYSON ET AL., APPELLANTS.

WAIVER OF JURY, AND FINDING BY COURT—REVIEW ON APPEAL—CONSTRUCTION OF STATUTES.—It was not the intention of the territorial legislature, by the Act of January 5, 1889, section 4, providing that in cases where a jury has been waived, and the cause tried by the court, "the supreme court" "shall review said cause, in the same, manner, and to the same extent, as if it had been tried by a jury," that the supreme court should pass upon the weight of the evidence introduced in the court below, but upon the sufficiency of the facts as found to support the conclusions of law.

HEARD on motion for rehearing, and the former judgment of the court reaffirmed.

The court states the case on the rehearing.

CATRON, THORNTON & CLANCY and ELLIOTT, PICKETT & ELLIOTT for appellants.

RYNERSON & WADE and S. B. NEWCOMB for appellees.

FREEMAN, J.—This is an action of trespass on the case, brought by the appellees against the appel-

lants in the district court of the county of Dona Ana,
wherein, by consent of parties, a jury was waived,
and the cause heard and determined by the court. A
general verdict and judgment were rendered in favor
of the appellees, from which judgment an appeal was
had to this court, which was heard and determined at
the January term, 1891, resulting in the affirmance of
the judgment below. The case is reported at page
487, 5 N. M. Rep., wherein the facts are very fully set
out in the opinion of this court, as rendered by Justice
LEE. In that opinion this court also endeavored to
dispose of all exceptions taken to the rulings of the
court below in the admission and rejection of testi-
mony. An application for rehearing was filed and
allowed, and the cause has been reargued at the
present term of court.

It is now insisted, with much zeal and ability, by
the attorneys for the appellants: First, that, under the
legislation of this territory, it is the duty of this court
to examine all the evidence in the case, precisely as if
we were sitting as a jury in the court below; and,
second, that having gone into the evidence, and
examined all the facts, as well as all the questions of
law, we will find that the judgment of the court below
is not supported by the evidence which was properly
received, and that we will become satisfied that the
weight of evidence is with the appellants, and that,
therefore, it will become our duty to reverse the judg-
ment of the court below. In order that there may be
no mistake as to the character of the issues which it
is insisted we are called upon to determine, we will
give the statement in the precise language of the
counsel for the appellants. "This statute [section 4,
Act January 5, 1889] requires the supreme court to
examine the record, and to determine the facts thereon.
It makes no exception in favor of rulings of the court,
but puts the whole record before the supreme court.

We insist that it requires the supreme court to retry this case the same as the court below tried it, or the same as a jury would have tried it, without reference to any finding of facts made by the court below, and that it is the duty of this court to weigh the evidence, and decide according to preponderance of evidence, and in that way ascertain the facts, after having passed upon all objections and exceptions taken, included in the bill of exceptions in the record, and expunge such evidence as was properly objected to. It is the duty of this court to ascertain from the evidence properly before it the various facts essential to make out a case,—whether the cattle of defendants came from Texas; whether there is any infected district in the state of Texas; whether or not said cattle came from such infected district; whether they were infected with any disease germ; whether they communicated the germ from which plaintiffs' cattle contracted the disease; whether they carried the disease, and in any manner communicated it; whether the disease from which plaintiffs' cattle died is the same disease described in the declaration; whether defendants had any knowledge that their cattle came from any infected district, or any knowledge whether cattle were diseased, or carried the germs of disease, or were liable to communicate any disease to plaintiffs' cattle, and whether that disease was the disease mentioned or described in the declaration; whether or not plaintiffs had as much knowledge of the disease as defendants; whether plaintiffs communicated their knowledge to defendants, or sufficient knowledge to put the defendants upon such inquiry as would have ascertained that their cattle came from an infected district, or were infected, or carried the germs of infection of the disease mentioned and described; whether or not plaintiffs did have the same amount of knowledge which would have put them upon the same inquiries; whether

or not they made any effort to guard against it; whether or not they were not negligent, in caring for their own cattle, in permitting them to run upon defendants' range, and whether or not it was not as probable that plaintiffs' cattle, if they contracted the disease from defendants' cattle, contracted it on defendants' range, from plaintiffs' negligently permitting their cattle to range with defendants' cattle, and neglected, failed, and refused to make any effort to keep them apart, after defendants' cattle had been driven to their own range; whether or not plaintiffs' cattle died from a contagion known, or commonly known, as 'Texas Cattle Fever;' and whether they did not die from a noncontagious disease, called 'Texas Fever.' We insist that if it should be found by this court that there is no evidence showing that defendants' cattle came from an infected district, or that defendants knew that they came from such infected district, plaintiffs' case fails. We further insist that if it appears from the evidence, either entirely, or by preponderance of the evidence, that defendants were ignorant that their cattle came from an infected district, and were also ignorant that their cattle carried any disease, or germs of disease, and that they were also ignorant that they were liable to communicate or spread any such disease, at the time they brought them into the territory of New Mexico, such fact, found in their favor, must defeat plaintiffs' case. We further insist that if plaintiffs had knowledge, or good reason to believe, that defendants' cattle came from an infected district, or were diseased, or carried the germ of a disease, and were liable to communicate the disease, that it was their duty to take every precaution against such disease, and that if, without making any effort to prevent it, they allowed their cattle to mix with, range and graze with, and on the same pastures with, defendants' cattle, they were guilty of contribu-

tory negligence, and can not recover, although defendants may have had the same knowledge as plaintiffs. We insist that plaintiffs having alleged that defendants' cattle communicated to their cattle a 'contagious disease,' called 'Texas Cattle Fever,' that if the evidence shows that plaintiffs' cattle died from a disease called 'Texas Fever,' and that such disease was not contagious, or that if they died from alkali or murrain, or any other disease except the disease known as 'Texas Cattle Fever,' and which was contagious, the plaintiffs can not recover. We furthermore insist that, if plaintiffs have alleged that the disease with which their cattle died was communicated to said cattle on the lands and premises of plaintiffs, that there is no proof showing that a single head of cattle of plaintiffs, which died, contracted the disease on the lands of plaintiffs, but that the proof shows at least as strongly that, if they did contract the disease from defendants' cattle, they contracted it on defendants' range and premises, or some other place besides the lands and premises of plaintiffs, and that when they contracted it, if they did contract it from defendants' cattle, plaintiffs were guilty of negligence,—at least, of sufficient negligence to make them contributory to the law. We claim that under section 2190 the court must look into all of these facts, and make these findings from a preponderance of the evidence."

The position that this extraordinary jurisdiction is conferred by section 2190, Compiled Laws, is not seriously contended for by appellants, who do insist, however, that it was conferred by the fourth section of the act of our legislature approved January 5, 1889, which is as follows: "In all cases now pending in the supreme court, or which may hereafter be pending in the supreme court, and which may have been tried by the equity side of the court, or which may have been

WAIVER of jury and finding by court: review on appeal: construction of statutes.

tried by a jury on the common law side of the court, or in which a jury may have been waived, and the cause tried by the court or judge thereof, it shall be the duty of the supreme court to look into all the rulings and decisions of the court which may be apparent upon the records, or which may be incorporated in a bill of exceptions, and pass upon all of them, and upon the errors, if any shall be found therein, in the rulings and decisions of the court below, grant a new trial, or render such other judgment as may be right and just and in accordance with law; and said supreme court shall not decline to pass upon any question of law or fact which may appear in any record, either upon the face of the record or in the bill of exceptions, because the cause was tried by the court or by the judge thereof without a jury, but shall review said cause in the same manner, and to the same extent, as if it had been tried by a jury." Bearing constantly in mind the closing paragraph of this enactment, that the court "shall review said cause in the same manner, and to the same extent, as if it had been tried by a jury," it becomes now our duty to ascertain what, if any, innovation upon the practice as known to the common law has been created by this enactment. In order to do this, we shall have to have recourse to the construction given by the supreme court of the United States to similar acts of congress.

The seventh amendment to the constitution provides that "no fact tried by a jury shall be otherwise reexamined in any court of the United States than according to the rules of the common law." The seventeenth section of our enabling act provides that "the constitution, and all laws of the United States which are not locally inapplicable, shall have the same force and effect within the said territory of New Mexico as elsewhere within the United States." The proviso to the first section of the act of congress approved

September 7, 1874, declares that "no party  *  *  *
shall be deprived of the right of trial by jury in cases
cognizable at common law." It is admitted that at the
common law there are but two modes by which the
finding of a jury upon a question of fact may be
reviewed, to wit, by the granting of a new trial by the
trial court, or the award of a venire facias de novo by
the appellate court for some error of law. Nor is it
seriously controverted that under a statute providing
that parties may, by consent, waive a jury, and submit
the matters in dispute, both as to the facts as well as
the law, to the determination of the court, the finding
of fact by the court has the same force and effect as
the verdict of a jury, unless the statute regulating such
submission provides for a different result. On the
former hearing we considered the facts established as
sufficient to form the basis for the conclusion reached
by the judge. Before proceeding to determine whether,
under our statute, the general finding of fact by a
judge sitting, as in this case, without the intervention
of a jury, is, as to the weight of evidence, subject to
review in this court, it will become necessary, as
already observed, to direct our attention to the con-
struction given by the supreme court of the United States
to statutes similar, in many vital respects, to our own.

The second section of the Act of April 20, 1871,
carried into the Revised Statutes at section 700, which
was an amendment to section 4 of the Act of March 3,
1865 (Rev. Stat., sec. 649), which was itself an amend-
ment to the twelfth section of the judiciary act of 1789,
taken in connection with the several acts of which it is
amendatory, constitutes a complete code for the deter-
mination, without the intervention of a jury, of matters
of fact arising in a common law proceeding. That
section is as follows: "When an issue of fact in any
civil cause in a circuit court is tried and determined by
the court without the intervention of a jury, according

to section 649, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the supreme court upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment." The concluding paragraph of section 649 is as follows: "The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." The concluding paragraph of our own act, as we have already seen, is that the finding of fact by the court below may be reviewed to the same extent as a finding of fact by a jury. So that it will appear, as already observed, that the national and territorial legislation is so nearly alike as to render the decisions of the supreme court of the United States instructive, if not binding upon us. In this territory a seeming attempt has been made to confer on this court the jurisdiction to revise the finding of a jury upon a question of fact. Section 2190 of the Compiled Laws provides that "the supreme court, in appeals or writs of error, shall examine the record, and on the facts therein contained, alone, shall award a new trial, reverse or affirm the judgment of the district court, or give such other judgment as to them shall seem agreeable to law." And yet the supreme court of this territory in the case of Bedon v. Baca, 2 N. M. 196, adopted as the law of this territory the following language, taken from Hilliard on New Trials: "That a verdict will not be set aside unless clearly, palpably, decidedly, and strongly against the evidence, or so much against the weight of the evidence as, on the first blush of it, to shock the sense, or unless there has been a flagrant abuse of discretion," etc. So, also, in construing the twenty-second section of the Act of

1789, commonly known as the "Judiciary Act," which provided "that there shall be no reversal in the supreme court or in the circuit court, upon a writ of error, for any error of fact," the supreme court of the United States held that no exception could be taken where there was no jury, or where the question of law was decided in the final judgment of the court. U. S. v. King, 7 How. 832; Craig v. State of Mo., 4 Pet. 410. The purpose, therefore, of section 4, Act March 3, 1865, was to confer upon the supreme court jurisdiction to pass upon such rulings of the court below as were excepted to at the time, and also to review the judgment of the court upon the question as to whether facts specifically found by the court were sufficient to support its judgment. The evident purpose of the legislation to which we have referred was to get rid of that infallibility which from time immemorial had attached, in all common law jurisdictions, to the verdict of a jury upon questions of fact. It had been demonstrated by experience that twelve men taken from the body of the vicinage, though "good and lawful" they may be, are in nowise safer arbiters of complicated facts, enveloped, it may be, in the mysteries of arts and sciences, than a lawyer trained in the art of weighing testimony, and experienced in the manner of the application of the rules of evidence. Hence it is that in many, if not in all, the states, the jurisdiction of the courts of equity has been from time to time enlarged and made to comprehend, at least concurrently, many of the oldest and best established matters of common law jurisdiction. The act of congress already referred to, as embodied in section 649, Revised Statutes, accomplished only in part the reformation intended to be ingrafted upon the common law practice; for having provided that the findings of the court, whether general or special, should have the force and effect of the verdict of a jury, it provided no

means whereby such a judgment might be reviewed. Hence it was held that the judgment of the court trying a cause, by stipulation waiving a jury, was in the nature of an award by a referee, and could not be reviewed. In order to meet this objection, and provide a means by which the findings of the trial judge might be reviewed, congress passed the act already referred to, as found at section 700, Revised Statutes. It is to be observed, however, that in none of the legislation to which reference has been made is there the slightest indication of any purpose upon the part of congress to change or modify the common law rule that the ascertainment of the facts in the trial of a common law cause is a matter of nisi prius jurisdiction. It is not a change of forum, but the substitution of the opinion of the judge for that of the jury, and is to that extent only a partial abrogation of so much of the ancient maxim as declares, "ad questiones facto non respondent judices." But right here we encounter what we believe to be the fatal error in the position assumed by the counsel for the appellants. It was not the purpose of congress, nor our legislature, to invest the appellate court with jurisdiction to pass upon the weight of the testimony introduced in the court below, but upon the sufficiency of the facts found by the court to sustain the conclusions of law. In cases of this character the judgment of the court below as to the credibility of witnesses and the weight of testimony has the same effect as is given to the verdict of a jury. The only revisory jurisdiction conferred upon the appellate court was to determine whether the facts found by the trial judge were sufficient to warrant the conclusions of law. So that by this amendatory legislation the forum for the determination of the weight of evidence was not changed. In the case of Guild v. Frontin, 18 How. 135, it was said: "Parties may, by consent, waive the trial of issues of fact by a jury, and

submit the trial of both fact and law to the court. It
will not be a mistrial. But, if they wish the judgment
of the court to be reviewed on a writ of error, a special
verdict or agreed statement of facts must be put on
the record." And in Suydam v. Williamson et al., 20
How. 427, it is said: "It is of the very essence of a
special verdict that the jury would find the facts on
which the court is to pronounce the judgment accord-
ing to law, and the court, in giving judgment, is con-
fined to the facts so found; and every special verdict,
to enable the appellate court to act upon it, must find
the facts and not merely state the evidence of facts. So
that where it states the evidence, merely, without
stating the conclusions of the jury, a court of error can
not act upon matters so found." In the case of Kelsey
et al. v. Forsyth, 21 How. 85, Chief Justice TANEY,
delivering the opinion of the court said: "It will be
seen from this statement that a common law action of
ejectment was submitted to the court upon the evidence
without the intervention of a jury, leaving it to the
court to decide the facts, as well as the law, upon the
evidence and admissions before it. The case, there-
fore, is the same in principle with that of Guild et al.
v. Frontin, 18 How. 135; and the doctrine in that case
was reaffirmed in the case of Suydam v. Williamson,
20 How. 428, and the grounds upon which it rests
fully set forth." In the case of Campbell v. Boyreau,
21 How. 223, the chief justice said: "The finding of
issues of fact by the court upon the evidence is alto-
gether unknown to the common law court, and can not
be recognized as a judicial act. Such questions are
exclusively within the province of a jury; and if, by
agreement of parties, the questions of fact in dispute
are submitted for decision to the judge, upon the evi-
dence, he does not exercise judicial power in deciding,
but acts, rather, in the character of an arbitrator; and
this court, therefore, can not regard the facts so found

as judicially determined in the court below, nor ex-
amine the questions of law as if those facts had been
conclusively determined by a jury, or settled by admis-
sions of the parties." This case is not cited as authority
applicable to the case at bar, because, as we have
already seen, it was the purpose of the act of March 3,
1865, to confer this jurisdiction. In the case of Pren-
tice v. Weissenger, 8 How. 485, in a lengthy review of
the decisions affecting this question, after going on to
show that it was impossible for that court to determine
whether inferences or conclusions of fact were correctly
drawn, the court say that such a determination is the
proper province of the jury, or of the judge himself, if
the trial by jury is waived. In the case of Graham v.
Bayne, 18 How. 63, it was said: "The counsel in this
case have agreed that 'if it should be necessary, to a
hearing of this cause in the supreme court, to treat the
evidence in the nature of a special verdict,' this agree-
ment may be good, as between themselves, and point
out the source from which the facts for a case stated or
special verdict may be drawn; but it can not compel
this court to search through the evidence to find out
the facts. The record exhibits the testimony and evi-
dence laid before the judge. It is evidence of facts,
but not facts themselves, as agreed or found. * * *
No mere agreement of counsel can substitute evidence
of facts in place of facts, or require the opinion of this
court on an imperfect statement of them. A writ of
error can not by these methods be converted into a
chancery appeal, nor a court of error into appellate
arbitrators."

In the case of Burr v. Des Moines Navigation
Railway Co., 1 Wall. 99, Justice MILLER, after referring
to the fact that, according to Sir William Blackstone,
error did not lie to a statement of facts, under the
English practice, an agreed statement of facts not
being in the nature of a special verdict, proceeds as

follows: "Under the practice of our courts, such agreements are signed by counsel, and spread upon the record at large, as a part thereof; and thus they become, technically, a part of the record, into which the appellate court look, with the other parts of it, to ascertain if there be error. * * * The statement of facts on which this court will inquire if there is, or is not, error in the application of the law to them, is a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest. The statement must be sufficient, in itself, without inferences or comparisons, or balancing of testimony or weighing evidence, to justify the application of the legal principles which must determine the case. It must leave none of the functions of a jury to be discharged by this court, but must have all the sufficiency, fullness, and perspicuity of a special verdict. If it requires of the court to weigh conflicting testimony, or to balance admitted facts, and to deduce from these the propositions of fact on which alone a legal conclusion can rest, then it is not such a statement as this court can act upon. The paper before us is the evidence of facts, and not the facts themselves, as agreed or found." Graham v. Bayne, 18 How. 62. It is to be noted that the concluding part of section 649 of the Revised Statutes, and the concluding part of our own statute, each places a limitation upon the exercise of the authority intended to be conferred. In the federal statute it says that such finding shall have the same effect as the verdict of a jury, while in the territorial statute it is declared, substantially, that such finding shall be reviewed in the same manner, and to the same extent, as if the cause had been tried by jury. It is further to be observed that under the federal statute, if such finding were general, it could not be disturbed at all; and in cases where the finding is special the review may extend, not

to the weight of the testimony, but to the sufficiency of the facts found to support the judgment.

It may not be amiss, just at this point, to institute an analytical comparison of the two statutes. The federal statute provides that issues of fact made by consent of parties be tried without the intervention of a jury. Our statute provides substantially the same thing. The federal statute provides that the rulings of the court in the progress of the trial of a cause, if excepted to at the time, may be reviewed by the supreme court. Our statute provides for a general review of all the "rulings and decisions of the court which may be apparent upon the record, or which may be incorporated in a bill of exceptions," and provides that the supreme court "shall not decline to pass upon any question of law or fact which may appear in any record, either upon the face of the record, or in the bill of exceptions, because the cause was tried by the court, or by the judge thereof, without a jury." It is difficult to discover any substantial difference in these two enactments, unless it is to be found in the requirement of our statute, that the court pass upon the entire record, while in the federal statute it was necessary, in order to invoke the revisory power of the supreme court, that exception be taken at the time, and duly presented by a bill of exceptions. This difference, however, is one of mode rather than of jurisdiction, and it is the question of jurisdiction that we are now discussing. The two statutes, national and territorial, having provided a means by which questions of fact may be determined by the the court below without the intervention of a jury, it is interesting to note the effect which is to be given to such findings. Was it intended by our statute that this court should sit as a jury to determine the weight of evidence submitted in the court below? We think the concluding part of the statute itself furnishes a complete negative to this proposition. "The court shall

review said cause in the same manner, and to the same extent, as if it had been tried by a jury." Under the federal statute, even where the finding is special, the supreme court can not pass upon the weight of the testimony given in the court below, but only on the sufficiency of the facts found. This doctrine has been laid down in many of the leading cases. Norris v. Jackson, 9 Wall. 125; Coddington v. Richardson, 10 Wall. 516; Miller v. Insurance Co., 12 Wall. 297; Insurance Co. v. Folsom, 18 Wall. 248. In Norris v. Jackson, supra, it was said: "The next thing to be observed is that, whether the finding be general or special, it shall have the same effect as the verdict of a jury; that is to say, it is conclusive as to the facts so found. In the case of a general verdict, which includes, or may include, as it generally does, mixed questions of law and fact, it concludes both, except so far as they may be saved by some exception which the party has taken to the ruling of the court on the law." So, also, it has been held in all of these cases that it was the lower court, and not the reviewing court, that congress intended to vest with the power to determine the weight of the evidence; that the parties, in their agreement, did not consent to submit the questions of facts to the supreme court, but to the lower court. In the case of Martinton v. Fairbanks, 112 U. S. 674, it was said: "The provision of the statute, that the finding of the court shall have the same effect as the verdict of a jury, cuts off the right to review in this case." But it is insisted by the counsel for the appellants that the application of this doctrine in the federal courts is governed by the authority of the seventh amendment to the constitution, which declares that no fact tried by a jury shall be otherwise reexamined in any court of the United State than according to the rules of common law. It is conceded for the purpose of this argument that the seventh amendment has

no special application to the courts of this territory,
although it was formerly held by the supreme court of
the United States that a territorial court had no power
to determine questions of facts in a common law action
without the intervention of a jury.   Webster v. Reid,
11 How. 460.    It has been settled, however, in the
more recent cases of Clinton v. Englebrecht, 13 Wall.
441, and Hornbuckle v. Toombs, 18 Wall. 654, that
the seventh amendment, so far as it related to courts,
was intended as a limitation, only, upon the power of
the courts of the United States, and that it did not
extend to territorial courts; that as to the latter they
were, like the state courts, invested with general juris-
diction.   Conceding, therefore, that our courts are not
restricted in their jurisdiction by the provisions of said
amendment, and that we must look alone to the sev-
eral acts of congress, and of our territorial legislature,
as defining the extent of our jurisdiction, it is never-
theless believed that the construction given by the
supreme court of the United States to the acts of con-
gress which we have been considering is authority for
the construction that we have placed upon our own
legislation, because it is to be observed that in all of
the cases which have passed under our review the point
determined was the intent of the act of congress.   If
congress had attempted to confer upon federal courts
the authority to determine facts arising out of common
law actions without the intervention of a jury, without
the consent of the parties, such an act would, of
course, have involved the authority of congress under
the seventh amendment.   But congress, acting within
the scope of its authority, having conferred on common
law courts the jurisdiction to determine, by consent of
the parties, issues of fact without the intervention of a
jury, and having declared that such determination shall
have the same force and effect as the verdict of a jury,
and our own legislature, acting within the scope of its

authority, having conferred on common law courts the power to determine questions of fact, by the consent of parties, without the intervention of a jury, and having given to such determination the same force and effect as that given to like findings in the federal courts, the construction given by the supreme court of the United States to these acts of congress becomes to us a source of the very highest authority in the construction of our own statute. The first section of the act of congress approved April 7, 1874, which authorizes the several territories of the United States to mingle in the same court a common law and chancery jurisdiction, contains a positive inhibition against any impairment of the right of trial by jury in common law cases. This provision of the national statute is not, of course, quoted for the purpose of casting any doubt over the validity of the act of the legislature providing for dispensing with a jury by consent of parties. It is referred to, however, for the purpose of noting the jealousy with which congress has preserved the right of trial by jury in the territories. Any act of the legislature, therefore, that provides for the trial of common law cases otherwise than by jury, must receive a strict construction. When, therefore, we are advised, as we have been by the concluding part of the act of the legislature, that the findings of fact reached by a court below, sitting instead of a jury, ought to receive the same consideration in this court as similar questions determined by a jury, we have no difficulty in determining the extent of our authority in the premises.

It is insisted, however, with great earnestness, on the part of the appellants, that the construction which we have given to the law places the rights of a litigant at the mercy of a judge who, through prejudice, ignorance, or corruption, may have chosen to ignore the facts. The manifest reply is that the law of the land offered to the appellants a jury of "good and lawful"

men, which they declined, choosing, rather, to submit the facts as well as the law of the case to the decision of a judge, who, so far as the record discloses, was not governed by other than sound judicial considerations.

In our former consideration of this case we examined the entire record. We became satisfied that the material questions of fact were seriously controverted; that there was competent evidence in the record, sufficient, if believed by the presiding judge to be true, to support the judgment rendered by him. We declined then, as we decline now, to pass upon the question of the credibility of the witnesses, or the weight of the testimony, but have considered these questions "in the same manner, and to the same extent, as if the cause had been tried by a jury." The former judgment of this court is, therefore, reaffirmed.

LEE and SEEDS, JJ., concur.

McFIE, J., took no part in the consideration or decision of this cause.